43987, 43988. PONDER et al. v. FULTON-DeKALB HOSPITAL AUTHORITY; and vice versa.
(353 SE2d 515)

CLARKE, Presiding Justice.

This appeal and cross-appeal arise out of a suit brought by Nellie Grace Ponder, individually and as mother and guardian of Walter

Lavar Ponder, for damages from injuries to Walter allegedly resulting from the malpractice of appellee Grady Memorial Hospital (Grady) in the treatment of Ms. Ponder during pregnancy, delivery, and treatment of Walter after delivery. Grady moved for summary judgment relying on charitable immunity. The trial court granted partial summary judgment to Grady, finding that the charitable immunity doctrine barred Ms. Ponder's claim except to the extent of funds available under Grady's self-insurance plan. Both Ms. Ponder and Grady appeal from this ruling. In her appeal, Ms. Ponder contends that the application of the charitable immunity doctrine to her is unconstitutional in that it violates both due process and equal protection. She claims that application of the doctrine interferes with a fundamental interest and disadvantages a class of people solely because of their indigency. Furthermore, she claims that the charitable immunity doctrine is racially discriminatory.

1. It has long been the rule in Georgia that "an incorporated hospital, primarily maintained as a charitable institution, is not liable for the negligence of its officers and employees, unless it fails to exercise ordinary care in the selection of competent officers and servants, or fails to exercise ordinary care in retaining such officers and employees." *Morton v. Savannah Hosp.*, 148 Ga. 438 (96 SE 887) (1918). There is an exception to this general rule: a charitable hospital may be liable for negligence to a paying patient, but the recovery is limited to income derived from non-charitable sources. Id.

By design the charitable immunity doctrine protects the funds of the charitable institution from depletion in order that these funds may be presumed to carry out the charitable purpose of the institution for the benefit of its beneficiaries. The doctrine does not constitute a violation of the equal protection or due process clauses of the federal or state constitutions. While the charitable institution is not liable to its beneficiaries, it is for their benefit that the assets are protected. The disadvantaged as a class, far from being discriminated against by the charitable institution, are its only beneficiaries. As for the argument of racial discrimination, Ms. Ponder in her brief admits that no facts have been developed to support such a claim.

The cases of *Boddie v. Connecticut*, 401 U. S. 371 (91 SC 780, 28 LE2d 113) (1971), and *Little v. Streater*, 452 U. S. 1 (101 SC 2202, 68 LE2d 627) (1981), relied upon by appellants to support their argument of a right to access to the civil courts, are distinguishable from the present case. *Boddie v. Connecticut* concerned access to the courts by indigent persons for the purpose of obtaining a divorce and was specifically limited to its facts. *Little v. Streater* is distinguishable both because of the quasi-criminal nature of the case and because of the issue of the parent-child relationship which the Court found entitled to constitutional protection.

Indigency is not a "suspect" category requiring "strict scrutiny" in equal protection analysis or even a category requiring an intermediate level of scrutiny to determine whether there is a substantial relationship to an important governmental objective. *San Antonio Independent School District v. Rodriguez*, 411 U. S. 1 (93 SC 1278, 36 LE2d 16) (1973); *McDaniel v. Thomas*, 248 Ga. 632 (285 SE2d 156) (1981). The proper standard for an equal protection analysis of the charitable immunity doctrine is whether it bears a rational relationship to the public policy of care for indigent persons. The charitable immunity doctrine does have a rational relationship to the care of indigent persons in that it protects the charitable assets available for their care.

2. A charitable institution waives charitable immunity to the extent of any liability insurance which it carries. *Morehouse College v. Russell*, 219 Ga. 717 (135 SE2d 432) (1964); *Young Men's Christian Assn. v. Bailey*, 112 Ga. App. 684 (146 SE2d 324) (1965); *Cox v. DeJarnette*, 104 Ga. App. 664 (123 SE2d 16) (1961). A liability insurance policy is a non-charitable asset which is not covered by the charitable immunity doctrine. *Cox v. DeJarnette*, supra. We must decide whether Grady's self-insurance plan bears enough of the characteristics of ordinary insurance to constitute a waiver of immunity.

Ms. Ponder argues that *Cox v. DeJarnette* is controlling on the issue of waiver of immunity. Grady contends that the liability policy in *Cox* is distinguishable from Grady's self-insurance plan in several respects. Most notably, in *Cox*, a finding of no waiver of immunity would have resulted in a windfall to the insurance company. Here, no such windfall would occur. Further, a finding of waiver in the present case would require a depletion of charitable assets because of the necessity of replenishing the self-insurance pool.

The definition of insurance demonstrates the respects in which Grady's plan differs from ordinary insurance. Insurance is a contract whereby one party agrees to assume certain risks for another party in consideration for the payment of premiums and to pay the insured party a specified amount on the happening of a particular contingency. *Bankers Health &c. Ins. Co. v. Knott*, 41 Ga. App. 639 (154 SE 194) (1930), quoting from 32 CJ 975, § 1. A necessary element of insurance is distribution of risk. Under Grady's plan, no premium is paid, no second party assumes the risk and no distribution of risk is accomplished. The Grady plan better fits into the mold of a reserve fund created to protect against contingencies. An important effect of the fund is the protection of the charitable assets. The policy considerations behind our holdings of immunity waiver to the extent of liability insurance coverage may be stated thusly: the premium has been paid, the coverage has been extended, so it must have been intended that the benefits be paid. No such policy considerations exist here.

The plan states its purpose as the provision of a fund to pay legal claims. We construe a legal claim for the purposes of this case to be a claim which could succeed in the absence of the fund. This claim could not. We therefore find that the hospital's defense of charitable immunity is not waived because of the existence of the self-insurance plan. Summary judgment should have been granted to Grady.

*Judgment affirmed in Case No. 43987; judgment reversed in Case No. 43988. All the Justices concur.*

DECIDED MARCH 12, 1987 —
RECONSIDERATION DENIED MARCH 24, 1987.

*Bird & Scherffius, William Q. Bird, Andrew M. Scherffius III,* for appellants.

*Alston & Bird, Judson Graves, Earle B. May, Jr., Eugene T. Branch,* for appellee.