546 So.2d 1055 (1989)
HILLSBOROUGH COUNTY HOSPITAL AND WELFARE BOARD, etc., Petitioner,
v.
Lottie TAYLOR, etc., Respondent.
No. 73,458.
Supreme Court of Florida.
July 20, 1989.
*1056 Michael N. Brown of Allen, Dell, Frank & Trinkle, Tampa, and Bonita L. Kneeland of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for petitioner.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Wagner, Cunningham, Vaughan & McLaughlin, P.A., Tampa, for respondent.
Harry Morrison, Jr., Deputy Gen. Counsel, Tallahassee, amicus curiae for the Florida League of Cities, Inc.
A. Broaddus Livingston, John W. Boult and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, amicus curiae for the Florida Bd. of Regents.
Robert A. Ginsburg, Dade County Atty., and Robert L. Blake, Asst. County Atty., Miami, amicus curiae for the Public Health Trust of Dade County.
BARKETT, Justice.
We have for review Hillsborough County Hospital and Welfare Board v. Taylor, 534 So.2d 711, 716 (Fla. 2d DCA 1988), which presents the following question[1] of great public importance:
WHETHER A GOVERNMENTAL HOSPITAL WHICH HAS ESTABLISHED A SELF-INSURANCE TRUST FUND WAIVES SOVEREIGN IMMUNITY AGAINST CLAIMS UP TO THE AMOUNT OF THE FUND UNDER SECTION 286.28, FLORIDA STATUTES (1979).[[2]]
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
In October 1980, Irma Jean Payne became comatose as a result of anesthesia administered during an operation at Tampa General Hospital. She sued the hospital through her guardian, respondent.
The hospital admitted liability and stipulated actual damages of $2,500,000. But it argued that its legal liability was limited to $50,000 by section 768.28(5), Florida Statutes (Supp. 1980).[3]
Respondent argued that a 1980 legislative restructuring of the publicly owned Tampa General Hospital, occurring in chapters 80-509[4] and 80-510,[5] Laws of Florida, was merely an attempt to vest the hospital with sovereign immunity; and that this attempt was unconstitutional because the bill title in chapter 80-510 failed to mention sovereign immunity, as required by article III, section 6 of the Florida Constitution. See ch. 80-510, Laws of Florida (1980). Respondent further argued that self-insurance is a form of insurance falling under section 286.28, Florida Statutes (1979), and that the hospital thus had waived sovereign immunity to the limits of its $2,500,000 self-insurance trust fund.[6]
*1057 The trial court struck chapter 80-510 as unconstitutional, based on respondent's argument. It also held that the hospital had waived sovereign immunity up to the $2,500,000 amount of the trust fund. Accordingly, it awarded respondent $2,500,000, the entire amount of the fund.
The Second District reversed the determination that chapter 80-510 was unconstitutional. It found that the Hospital and Welfare Board already had obtained sovereign immunity as a result of 1977 amendments to section 768.28(5).[7] However, it agreed that the hospital had waived sovereign immunity up to a maximum of $2,500,000, the amount in the self-insurance trust fund.
The central issue in this case is whether self-insurance can be equated with commercial insurance for purposes of determining the waiver of sovereign immunity under section 286.28, Florida Statutes (1979). For the reasons expressed below, we believe it cannot.
Florida law shows no disagreement over what constitutes "insurance." The state's insurance code defines the term to mean "a contract whereby one undertakes to indemnify another or pay or allow a specified amount or a determinable benefit upon determinable contingencies." § 624.02, Fla. Stat. (1987). An "insurer" is one "engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity." § 624.03, Fla. Stat. (1987).
Black's Law Dictionary 721 (5th ed. 1979) defines "insurance" as:
A contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils.
Some Florida cases, considering the issue in contexts different from those presented here, have agreed that there is no "insurance" unless there is a contract for indemnity between at least two parties. E.g., State Farm Mut. Automobile Ins. Co. v. Universal Atlas Cement Co., 406 So.2d 1184, 1186 (Fla. 1st DCA 1981), review denied, 413 So.2d 877 (Fla. 1982).
In a variety of contexts, a significant number of American jurisdictions have held that self-insurance is not the same as insurance. E.g., In re Request for Opinion of the Supreme Court Relative to the Constitutionality of SDCL 21-32-17, 379 N.W.2d 822 (S.D. 1985); American Nurses Ass'n v. Passaic Gen. Hosp., 192 N.J. Super. 486, 471 A.2d 66 (Super.Ct.App.Div.), rev'd on other grounds, 98 N.J. 83, 484 A.2d 670 (1984); American Family Mut. Ins. Co. v. Missouri Power & Light Co., 517 S.W.2d 110 (Mo. 1974); United Nat'l Ins. Co. v. Philadelphia Gas Works, 221 Pa.Super. 161, 289 A.2d 179 (Super.Ct. 1972); Universal Underwriters Ins. Co. v. Marriott Homes, Inc., 286 Ala. 231, 238 So.2d 730 (1970); Allstate Ins. Co. v. Zellars, 452 S.W.2d 539 (Tex.Civ.App.), modified on other grounds, 462 S.W.2d 550 (Tex. 1970).
Dealing with precisely the same issue before this Court, our sister court in Georgia has directly held that self-insurance by a governmental entity does not waive sovereign immunity. The Georgia Court made the following pertinent observation:
A necessary element of insurance is distribution of risk. Under [the self-insurance] plan, no premium is paid, no second party assumes the risk and no distribution of risk is accomplished... . The policy considerations behind our holdings of immunity waiver to the extent of liability insurance coverage may be stated thusly: the premium has been paid, the coverage has been extended, so it must have been intended that the benefits be paid. No such policy considerations exist here.
Ponder v. Fulton-DeKalb Hosp. Auth., 256 Ga. 833, 835, 353 S.E.2d 515, 517, cert. denied, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987).
*1058 We find this analysis directly supported in the language of section 286.28, Florida Statutes (1979). Prior to its repeal,[8] that statute provided that the waiver occurred when there was (1) a contract for insurance supported by consideration (2) with an insurer. § 286.28(2), Fla. Stat. (1979). Neither of those elements exists in the present case. Thus, by the express terms of section 286.28(2), Florida Statutes (1979), the self-insurance trust fund established in this insurance did not result in a waiver of sovereign immunity because it was not a contract with an insurer.
We answer the certified question in the negative, quash that portion of the opinion below in conflict with the views expressed herein and remand for further proceedings consistent with this opinion. We do not reach any other question posed by this review.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW and GRIMES, JJ., concur.
McDONALD, J., concurs specially with an opinion.
KOGAN, J., dissents.
McDONALD, Justice, concurring specially.
I agree with the answer to the certified question. The self insurance trust fund is not insurance and hence section 286.28, Florida Statutes (1979), has no application in this case.
I cannot help but wonder, however, if this Court may have been mistaken in Eldred v. North Broward Hospital District, 498 So.2d 911 (Fla. 1986), when we clothed hospitals and hospital districts within the protection of sovereign immunity. Historically, the liability and responsibility of public and private hospitals has been the same. To the patient at least, it seems unfair for one to have a limited right of recovery and another full rights. The Utah Supreme Court has recently held a $100,000 limitation to patients of a state-owned hospital to be unconstitutional. Condemarin v. University Hospital, 775 P.2d 348 (Utah 1989). While I am unwilling to make that declaration on the status of the record in this case, this is a matter of great concern to me.
NOTES
[1] In addition to the question noted in the text, the district court also certified the following question:

1. WHETHER THE ESTABLISHMENT OF A SELF-INSURANCE TRUST FUND OR ESCROW ACCOUNT BY THE GOVERNMENT HOSPITAL IS EQUIVALENT TO THE PURCHASE OF INSURANCE?
Hillsborough County Hosp. & Welfare Bd. v. Taylor, 534 So.2d 711, 716 (Fla. 2d DCA 1988). We find this question superfluous and do not address it.
[2] Section 286.28, Florida Statutes (1979), provided in pertinent part:

(2) In consideration of the premium at which such insurance [of state political subdivisions] may be written, it shall be a part of any insurance contract providing said coverage that the insurer shall not be entitled to the benefit of the defense of governmental immunity ...; and that the immunity of said political subdivision ... [is] waived to the extent and only to the extent of such insurance coverage... .
[3] Section 768.28(5), Florida Statutes (Supp. 1980), provides in pertinent part:

Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000... .
[4] Chapter 80-509, Laws of Florida, abolished the Hillsborough County Hospital and Welfare Board and transferred all of its assets and functions to the newly created Hillsborough County Hospital Authority.
[5] Chapter 80-510, Laws of Florida, created the Hillsborough County Hospital Authority.
[6] This fund was authorized by section 768.54(2)(c), Florida Statutes (Supp. 1980), as an alternative to participation in the Florida Patient's Compensation Fund.
[7] These amendments explicitly rejected Attorney General Opinion 076-41 (Feb. 23, 1976), which argued that the waiver contained in section 768.28 did not apply to municipalities because they had not enjoyed sovereign immunity prior to July 1, 1974. The 1977 Legislature then revised the limitations of liability to explicitly apply to all political subdivisions of the state. Ch. 77-86, Laws of Florida.
[8] Ch. 87-134, Laws of Florida.