A94A2424, A94A2425. BAGLEY v. FULTON-DeKALB HOSPITAL AUTHORITY et al.; and vice versa.

(455 SE2d 325)

BEASLEY, Chief Judge.

On July 14, 1984, Tammy Bagley entered Grady Memorial Hospital, operated by the Fulton-DeKalb Hospital Authority ("Grady"), and gave birth to a son. Her son died November 2, 1986. Bagley sued Grady, along with physicians Miller and Bunch, and nurse Mongiello, contending that malpractice on the part of the medical professionals caused her son's death, and that Grady was liable under the theory of respondeat superior. Grady and the individual defendants filed a motion for summary judgment based upon the doctrine of charitable immunity. On March 31, 1994, the court granted summary judgment to Grady on this ground but ruled that the doctrine of charitable immunity does not extend to individuals.

Bagley appeals from the grant of summary judgment to Grady (Case No. A94A2424). Grady and the individual defendants appeal from the denial of their motion for summary judgment (Case No. A94A2425).

## Case No. A94A2424

1. Bagley asserts that the doctrine of charitable immunity is unavailable to Grady, but the Supreme Court has held otherwise. *Ponder v. Fulton-DeKalb Hosp. Auth.*, 256 Ga. 833 (353 SE2d 515) (1987): "It has long been the rule in Georgia that 'an incorporated hospital, primarily maintained as a charitable institution, is not liable for the negligence of its officers and employees, unless it fails to exercise ordinary care in the selection of competent officers and servants, or fails to exercise ordinary care in retaining such officers and employees.' [Cit.]" Id. at 834 (1). We have applied this ruling on a number of occasions, recognizing that "[a]s a charitable institution Grady is generally entitled to the defense of charitable immunity. [Cits.]" *Fulton-DeKalb Hosp. Auth. v. Fanning*, 196 Ga. App. 556, 557 (1) (396 SE2d 534) (1990). See also *Walker v. Fulton-DeKalb Hosp. Auth.*, 200 Ga. App. 750, 751 (2) (409 SE2d 529) (1991); *Cutts v. Fulton-DeKalb Hosp. Auth.*, 192 Ga. App. 517, 519 (3) (385 SE2d 436) (1989); and *Patterson v. Fulton-DeKalb Hosp. Auth.*, 192 Ga. App. 167 (384 SE2d 205) (1989). In addition, Grady produced evidence in this case of its status as a charitable institution.

Bagley contends the immunity has been waived. *Ponder* specifically addressed the question of whether Grady's self-insurance plan constituted a waiver of charitable immunity. The Court analyzed Grady's "self-insurance" plan to determine whether it was to be likened to a commercial insurance policy, thereby waiving Grady's ability to assert the charitable immunity defense, or whether it was to be likened to a "reserve fund created to protect against contingencies," which would preserve Grady's ability to assert the protection of charitable immunity. *Ponder*, supra at 835 (2). The Court held that immunity had not been waived by the self-insurance plan, stating that "[t]he Grady plan better fits into the mold of a reserve fund created to protect against contingencies. An important effect of the fund is the protection of the charitable assets. The policy considerations behind our holdings of immunity waiver to the extent of liability insurance coverage may be stated thusly: the premium has been paid, the coverage has been extended, so it must have been intended that the benefits be paid. No such policy considerations exist here." Id. at 835 (2). There is no suggestion that Grady has now secured liability coverage.

Bagley contends that in 1987, after the decision in *Ponder*, Grady changed its plan from a "self-insurance plan" to a "contingency reserve fund," and that the new plan does constitute a waiver of the immunity. The change in the designation of the plan occurred after both the 1984 treatment of the child and his 1986 death. Bagley does not indicate where in the record a copy of the 1987 plan may be

found, but the evidence to which she does cite, and which she contends shows a change in the plan to her benefit, actually indicates that the 1987 change was intended to have only prospective application. As *Ponder* has specifically held that the plan in effect at the time of the injuries did not waive charitable immunity, and the only indication in the evidence is that the post-*Ponder* change had only prospective application, there has been no waiver of charitable immunity that could affect this case. Whether the post-*Ponder* change constitutes a waiver of charitable immunity is not implicated.

2. Bagley contends that charitable immunity is inapplicable because she falls into an exception for paying patients. "[A] charitable institution may not assert the immunity against a person who '(1) enters the hospital under an agreement to pay for services, (2) is able to pay for services, and (3) does pay for services.'" *Walker v. Fulton-DeKalb Hosp. Auth.*, supra at 751 (2). When the defendant hospital produces evidence that the patient is the recipient of its charity, the patient who claims she is a paying patient and is not the recipient of charity has the burden of proving that status. *Fulton-DeKalb Hosp. Auth. v. Fanning*, supra at 559-560 (1).

Grady produced the affidavit of its chief executive officer who averred that Bagley had paid $2 for care that cost over $20,000. Bagley asserts it was error for the trial court to consider the records accompanying the affidavit because the affidavit did not state that the attached records were "true and correct copies" of Grady's business records. The affidavit did state that "the business records attached hereto" were kept in the regular course of business. See OCGA § 24-3-14. An affidavit need not recite the words "true and correct copies" before the accompanying business records will be admissible. Questions about the accuracy of business records go to their weight, not their admissibility. *Don Howard's Music Mart v. Southern Bell Tel. &c. Co.*, 154 Ga. App. 648, 649 (2) (269 SE2d 506) (1980). Thus, Grady " 'produced [admissible] evidence that it had extended its charity to (the patient, so that) the burden shifted to [the patient] to produce evidence showing that (the patient) came within the exception to the charitable immunity doctrine and that . . . [she] was . . . a "paying patient" with a secondary source for paying the balance.' [Cit.]" *Fulton-DeKalb Hosp. Auth. v. Fanning*, supra at 559 (1). Bagley had to show that she entered the hospital under an agreement to pay, had the ability to pay, and that there was payment in fact. *Walker v. Fulton-DeKalb Hosp. Auth.*, supra.

We need not address every element of the test; Bagley points to no evidence that she or any secondary source paid for the services received on July 14 and 15, 1984. It is these services she contends were performed negligently and ultimately caused her son's death. She does contend in her brief that the Medicaid system paid Grady

for her son's medical expenses, but her only reference to evidence of this is a statement allegation in deposition that Medicaid paid for other medical expenses after his birth. As she has not demonstrated that she came within the "paying patient" exception to charitable immunity, the court was bound to grant Grady's motion for summary judgment.

### Case No. A94A2425

3. Grady and the individual defendants contend that charitable immunity applies to the individual defendants. The court denied summary judgment to them, relying upon *Cutts v. Fulton-DeKalb Hosp. Auth.*, 192 Ga. App. 517, 519 (3) (385 SE2d 436) (1989). Grady urges that the decision should be overruled. In *Cutts*, we held that the protection of the doctrine did not extend to employees of the charitable hospital because individual professionals have a duty to exercise a reasonable degree of care and skill when providing medical treatment and that "[i]nsulating them from liability for breaching this duty simply because they were employed by a charitable hospital would not further the purpose of the charitable immunity doctrine. 'By design the charitable immunity doctrine protects *the funds of the charitable institution from depletion* in order that these funds may be (preserved) to carry out the charitable purpose of the institution for the benefit of its beneficiaries.' . . . [Cit.]" Id.

We are not persuaded that extending the immunity to the individual physicians would be within the purpose of the doctrine in that Grady will be "obligated" to use its assets to pay any judgment against the individual defendants. It appears that Grady considers itself bound to indemnify professionals who serve there based on an agreement between Grady and the medical teaching institution which furnishes those professionals. Assuming such an agreement, it cannot extend the charitable immunity to the individuals. While charitable immunity, and the public policies behind it, protect Grady's charitable assets, it is not within the doctrine, nor within public policy, to allow Grady to enter into private agreements to spread the protection of a public policy doctrine over private parties who commit malpractice. While Grady may privately enter an indemnification agreement, any commitment on its part to use its assets to indemnify others is not protected by the doctrine.[1]

---

[1] Again, we are not informed whether the record contains a copy of any indemnification agreement. However, neither party suggests that an indemnification agreement is only a recent addition to the self-insurance plan examined in *Ponder* and *Cutts*, supra. As such, its existence could not affect our analysis of Grady's ability to assert the protection of the charitable immunity defense addressed in Division 1.

*Cutts* properly determined that the purpose of the doctrine is to protect the charitable assets of the hospital, not the assets of the professionals who work there. The trial court's reliance on it is sound.

*Judgments affirmed. Andrews and Johnson, JJ., concur.*

DECIDED MARCH 8, 1995.

*Bird, Ballard & Still, William Q. Bird,* for appellant.
*Alston & Bird, Robert P. Riordan,* for appellees.