## A94A2714. FULTON-DeKALB HOSPITAL AUTHORITY
## v. WALKER et al.
(456 SE2d 97)

SMITH, Judge.

This is the second appearance of this case in this court. In *Walker v. Fulton-DeKalb Hosp. Auth.*, 200 Ga. App. 750 (409 SE2d 529) (1991), we affirmed the trial court's grant of summary judgment in favor of the Fulton-DeKalb Hospital Authority d/b/a Grady Memorial Hospital ("Grady"). The Supreme Court denied the Walkers' application for certiorari. 202 Ga. App. 907.

Over two years later, Sharon and David Walker filed a motion to set aside the judgment on the ground that Grady had fraudulently obtained summary judgment by concealing from them (and from the court) that its contingency reserve fund plan had been amended and that it purportedly waived the charitable immunity defense. Grady denied any fraudulent concealment, and it moved to dismiss the Walkers' motion to set aside or, alternatively, for summary judgment. The trial court denied Grady's motion. Grady's claim of attorney-client privilege with respect to certain information sought to be discovered by the Walkers was also rejected. The trial court certified both orders for immediate review, and we granted Grady's application for interlocutory appeal.

It is undisputed that Grady has had some sort of self-insurance or contingency reserve program to protect its assets against malpractice claims since 1975 and that it has no commercial insurance coverage for such claims. Deposits from Grady's operating budget to the fund are made under a trust agreement with a bank. The plan adopted in 1975 was designated a self-insurance plan.

In 1987, the Supreme Court decided in *Ponder v. Fulton-DeKalb Hosp. Auth.*, 256 Ga. 833 (353 SE2d 515) (1987), that because payments from the fund would deplete Grady's charitable assets, Grady's self-insurance plan did not amount to "liability insurance" and Grady had not waived its charitable immunity when it adopted the plan. Id. at 835. In 1987, after the decision in *Ponder*, Grady adopted a new plan, the "Fulton-DeKalb Hospital Authority Contingency Reserve Fund." It continued to have many of the same provisions, but it also contained a new, limited waiver of charitable immunity.[1] That waiver provided that it was applicable "only to claims and suits as to which the claimant or plaintiff specifically acknowledges applicability of this limited waiver provision and alleges or asserts that the suit or claim is brought pursuant to the provisions of this section." The plan ex-

---

[1] The new plan also changed the payment limits for any single occurrence and for the overall annual total payable for all occurrences. Those changes are not material to this appeal.

pressly reserved all other immunities and provided that it "is not, and shall not be construed as, a general waiver of the charitable immunity doctrine. . . ." In *Walker I* (decided after the adoption of the contingency reserve fund plan), this court affirmed the trial court's grant of summary judgment to Grady on three grounds: sovereign immunity, charitable immunity, and statutory immunity.

Even if the trial court's grant of summary judgment to Grady was based only upon charitable immunity, this court had the power to affirm the judgment below on either of the two alternative grounds under the principle that a trial court's judgment right for any reason will be affirmed.[2] See *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 134 (3) (e) (430 SE2d 98) (1993); *Scott v. Hamilton Dorsey Alston Co.*, 206 Ga. App. 504, 505 (2) (426 SE2d 55) (1992). Therefore, even accepting appellee's contention and assuming Grady's charitable immunity was waived under the 1987 contingency reserve plan, if summary judgment in favor of Grady was proper either on sovereign immunity or statutory immunity grounds, it served no purpose to set aside the judgment based on the ground that charitable immunity had been waived because of the fraud alleged by the Walkers. In this case, therefore, the Walkers had the burden of showing that Grady was not entitled to summary judgment on *any* of the bases upon which the decision in *Walker I* rests. If the Walkers did not carry this burden, their motion was unavailing, even if correct as to the charitable immunity ground, and the trial court should have granted Grady's motion to dismiss it. We therefore first address the two alternative grounds.

1. OCGA § 9-11-60 (h) provides that "[t]he law of the case rule is abolished; . . . provided, however, that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." If the decision of an appellate court thereafter becomes "incorrect" because the law changes — either because of subsequent case law or because of later-enacted statutes — it may not be binding precedent for other situations. However, between the parties to the original decision it remains binding. See *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117, 122 (335 SE2d 547) (1985); *Gober v. Hosp. Auth. &c.*, 191 Ga. App. 498, 499 (2) (382 SE2d 106) (1989). Any other practice would result in constant relitigation of issues as the law continually evolves.

---

[2] Contrary to the Walkers' argument that this court's holdings as to sovereign immunity and statutory immunity are dicta, " 'where there are two grounds, upon either of which the judgment of the trial court can be rested, and the appellate court sustains both, the ruling on neither is *obiter*, but each is the judgment of the court and of equal validity with the other.' [Cits.]" *Dooly v. Gates*, 194 Ga. 787, 793 (22 SE2d 730) (1942).

Although the Supreme Court's recent decision in *Thomas v. Hosp. Auth. of Clarke County*, 264 Ga. 40 (440 SE2d 195) (1994), holding that hospital authorities are not entitled to sovereign immunity, is now "the law" as to this issue for all other litigants, it can have no effect on these parties because of the earlier contrary affirmance of summary judgment on this issue in *Walker I*. It is binding on this court as well as the trial court. The Walkers therefore may not successfully contend that Grady was not *entitled* to assert the defense of sovereign immunity in 1990. The Walkers may contend this defense has been waived, but they have the burden of establishing such a waiver. " 'Sovereign immunity is not an affirmative defense that must be established by the party seeking its protection. Instead, immunity from suit is a privilege . . . and the waiver must be established by the party seeking to benefit from the waiver.' . . . [Cit.]" *City of Lawrenceville v. Macko*, 211 Ga. App. 312, 314 (1) (439 SE2d 95) (1993).

We find they have not carried this burden. The language of the 1987 plan makes clear that Grady expressly reserved all immunities to which it was entitled, except for a limited waiver of charitable immunity. It specifically and expressly provided that the plan was "not, and shall not be construed as, a general waiver of the charitable immunity doctrine [or] a waiver of . . . any other immunity as to any claim or suit against a covered person. . . ." Contrary to the Walkers' argument, the waiver of sovereign immunity in *another* plan adopted by Grady *after* the trial court granted summary judgment in *Walker I* does not apply to them. A subsequent waiver is inapplicable to this action because a "waiver of sovereign immunity occurs at the time that the action arises." *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 53 (3) (414 SE2d 638) (1992).

The entire premise of the dissent is also based upon the applicability to this case of the later, *second* revision of the plan, which was adopted in *1990*, after the Supreme Court overruled *Med. Center Hosp. Auth. v. Andrews*, 250 Ga. 424 (297 SE2d 28) (1982). Although the dissent refers to this plan as the "post-*Ponder* plan," the plan adopted in reaction to the *Ponder* decision was adopted in 1987. *That* is the plan applicable here, and not the 1990 plan. By the time the 1990 plan was adopted, summary judgment had been granted by the trial court and a notice of appeal had been filed.[3]

The Walkers' reliance upon *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992), in support of their conten-

---

[3] We note also that, having decided that "the plan" waived all immunities, the dissent nevertheless fails also to address the issue then created by Grady's disclosure to the Walkers that a plan was in effect, and the Walkers' subsequent failure to conduct further discovery that would have revealed its exact terms.

tion that a self-insurance plan is sufficient to waive sovereign immunity, is similarly misplaced. First, *Litterilla* had not yet been decided when this court affirmed the trial court's grant of summary judgment to Grady. Second, *Litterilla* is distinguished on its facts. The hospital in that case had purchased an "umbrella" liability policy to supplement its self-insurance plan, and the Supreme Court held that "the Umbrella Liability Policy together with the trust fund created by the Hospital . . . constitutes 'liability insurance protection' within the meaning of the constitutional provision [regarding waiver in effect at the time] and therefore acts as a waiver of sovereign immunity." Id. at 36. Moreover, in *Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990), the Georgia Supreme Court held that counties are not authorized to waive sovereign immunity by creating such self-insurance plans because "under the statutes dealing with liability insurance for government employees and officials, only state self-insurance plans will waive sovereign immunity." Id. at 209. Therefore, under the authority of *Logue*, Grady's plan cannot operate to waive sovereign immunity.[4]

Because the Walkers had the burden of establishing waiver of the defense of statutory immunity and failed to do so, the prior grant of summary judgment on the statutory immunity ground, affirmed by this court in *Walker I*, may safely stand. It is therefore unnecessary to consider the other two grounds. The trial court erred in denying Grady's motion to dismiss or for summary judgment.

2. It follows that we need not address Grady's contention that the trial court erred in ruling that the documents sought to be discovered by the Walkers were privileged.

*Judgment reversed. Birdsong, P. J., McMurray, P. J., Andrews, Johnson and Ruffin, JJ., concur. Beasley, C. J., Pope, P. J., and Blackburn, J., dissent.*

POPE, Presiding Judge, dissenting.

After *Ponder* was decided in 1987, the Authority established a new trust fund in which millions of dollars were set aside for the purpose of paying negligence claims. Nonetheless, representatives of the Authority stated under oath in the years 1988 through 1990 that the Authority had no assets set aside from their operating funds, that nothing had changed since *Ponder*, and that it had no documents relating to any type of self-insurance plan.

---

[4] This court so held in *Culberson v. Fulton-DeKalb Hosp. Auth.*, 201 Ga. App. 347, 348 (1) (b) (411 SE2d 75) (1991). But see *Thomas v. Hosp. Auth. of Clarke County*, supra, 264 Ga. 40, 41 ("hospital authorities, because they are neither the state nor a department or agency of the state, are not entitled to the defense of sovereign immunity"). We have held, infra, that *Thomas* does not apply here.

Unlike the majority, I believe the existence of a new, post-*Ponder* trust fund established for the purpose of defending and paying negligence claims (and the Authority's alleged fraud in failing to disclose it) is relevant to the Authority's defenses based on sovereign and statutory immunity as well as charitable immunity. Accordingly, I believe the Authority's motions for dismissal and summary judgment were properly denied.

The new, post-*Ponder* plan waived sovereign immunity in addition to charitable immunity. The chairman of the Authority's board at the time the new plan was adopted testified that the Authority intended to waive both charitable and sovereign immunity to allow patients to bring claims up to a certain limit. (Indeed, what purpose would it serve to waive charitable immunity without waiving sovereign immunity?) It is true that the initial version of the plan expressly waived only charitable immunity. But at that time, the Authority was not entitled to rely on sovereign immunity under *Med. Center Hosp. Auth. v. Andrews*, 250 Ga. 424 (297 SE2d 28) (1982). When the Georgia Supreme Court overruled *Andrews* and held that hospital authorities were entitled to rely on a sovereign immunity defense (see *Self v. City of Atlanta*, 259 Ga. 78 (377 SE2d 674) (1989)), the Authority actually revised the plan to clarify the scope of its waiver: "One of the purposes and intent of the Authority in establishing this Fund is to provide a limited waiver of its charitable and sovereign immunity defenses." Moreover, the revised plan explicitly stated that January 1, 1988 would be the effective date of the waiver, and that it would be applicable to claims and suits "arising out of occurrences which take place on, or subsequent to, January 1, 1988."[5]

Because the plan waives sovereign as well as charitable immunity, the alleged fraud goes to prior rulings with respect to both defenses.

The Authority's allegedly fraudulent withholding of the plan is also relevant to the statutory immunity defense, as the statutory immunity referred to in *Walker I* is simply a form of charitable immunity which is waived by a general waiver of charitable immunity. See OCGA § 51-1-29.1.

In short, it appears that the trial court's initial grant of summary judgment and our holdings in *Walker I* were all based on an incorrect set of facts provided by the Authority — that the *Ponder* plan was

---

[5] In *Bagley v. Fulton-DeKalb Hosp. Auth.*, 216 Ga. App. 537 (455 SE2d 325) (1995) we recently held that, based on the evidence presented to us, it did not appear that the post-*Ponder* plan was intended to be retroactively applied to incidents happening in 1984 or 1986. (*Ponder* was decided in 1987.) Contrary to the Authority's suggestion, however, this does not mean that a 1990 revision to the post-*Ponder* plan — a revision which the plan drafters explicitly made applicable to any occurrence after January 1, 1988 — cannot be applied by its terms to an occurrence, such as this one, which happened after January 1, 1988.

still the only plan in effect. Thus, the holdings resulting from the alleged fraud should not preclude consideration of whether the Authority's conduct does in fact constitute fraud sufficient to warrant setting aside the earlier judgment under OCGA § 9-11-60 (d) (2).

I am authorized to state that Chief Judge Beasley and Judge Blackburn join in this dissent.

DECIDED MARCH 17, 1995 — 

*Alston & Bird, G. Conley Ingram, Robert D. McCallum, Jr., Bernard Taylor, Rogers & Hardin, C. B. Rogers,* for appellant.

*Bird, Ballard & Still, William Q. Bird, Robert K. Finnell,* for appellees.