A00A1795. FIRST BORN CHURCH OF THE LIVING GOD, INC. et al. v. BANK OF AMERICA, N.A. et al.

(546 SE2d 1)

POPE, Presiding Judge.

This case involves a heated contest that began in 1994 for control of the First Born Church of the Living God, Inc.[1] The contestants are the Executive Board of the church on one side, and Senior Bishop Albert Hill and his alleged successor Bishop Leonard Goode on the other.[2] Essentially, the Board contends that according to the church constitution it holds the supreme authority of the church and that it used that authority to remove Hill. Hill and, now, Goode contend that even if the Board has the supreme authority, it failed to follow the procedural requirements of the constitution when it removed Hill.

This is the second appearance of this case in this Court. The litigation began as an interpleader action filed by Bank South, N.A. (now known as Bank of America, N.A.) in the Superior Court of Ware County to determine who at the church had authority over the church's accounts at the bank. The bank was responding to the fact that in November 1994, at an emergency meeting, the Executive Board of the church voted to remove Senior Bishop Hill, to designate Bishop W. L. Johnson as the new senior bishop, and to remove Hill as a signatory on the church bank accounts. The Board then instructed the bank not to honor checks signed by Hill. After receiving a check signed by Hill, the bank filed the interpleader action. The trial court held a hearing (apparently a bench trial), upheld the Board's decision removing Hill, and ordered the bank to comply with the direction of the Board. The trial court stated that its order "shall be a final order in this case."

In *First Born Church of the Living God v. Bank South*, 221 Ga. App. 739 (472 SE2d 469) (1996) (*"First Born I"*), this Court reversed.

---

[1] Indeed, both sides claim the right to file pleadings in the name of the church.

[2] Albert Hill died in April 1999, and Goode, Hill's son-in-law, asserts that he succeeded Hill because Hill appointed him to be the assistant senior bishop in July 1998.

This Court held that the dispute concerned control of church property and whether the Board complied with the provisions of its written constitution. Therefore the issue was secular and not ecclesiastical in nature. And, because the Board had failed to follow the procedural requirements of the church constitution when it changed the administration of the church's accounts with the bank and when it removed Senior Bishop Hill, those actions were invalid. This Court concluded: "Therefore, the actions at issue here, taken in violation of the express legislative procedures required by the Church's constitution[,] were not validly enacted." Id. at 741-742. On November 6, 1996, the trial court "ordered that the judgment of the Court of Appeals be and is hereby made the Judgment of this Court."

However, the trial court did not enter a final judgment. Instead, it apparently retained jurisdiction of the case and eventually had a second bench trial, held on September 8 and November 18, 1999, reconsidering whether Hill had been properly removed by the Board in 1994 or later expelled and excommunicated in either 1995 or in 1997/1998. Neither party had amended the pleadings. Rather, it would appear that the Board simply desired another hearing, over four years after the initial hearing, in an attempt to get the court to ratify at least one of the Board's two subsequent attempts to oust Senior Bishop Hill. Indeed, at the bench trial, the court asked the Board, "Your intention is to submit evidence as to what has taken place since the Court of Appeals sent its decision down and then ask for another order of the Court . . . either for or against?" Counsel for the Board replied, "That's correct with the exception that some of the events that would be in the evidence occurred while the case was pending on appeal." After a bench trial, the court again held in favor of the Board, and that decision is the one now on appeal.

The trial court first held that the law of the case established in *First Born I* was not controlling. The court then held (1) that contrary to *First Born I*, this case involves not a church property dispute, but a religious dispute, the resolution of which is for ecclesiastical and not civil tribunals; (2) that the Executive Board is the highest tribunal of the church and therefore the trial court must defer to its decisions; (3) that the Board itself concluded that it had complied with the constitution when it terminated Hill in 1994; (4) that therefore, contrary to this Court's holding in *First Born I*, Hill was properly removed in 1994; (5) that the Board also removed Hill in accordance with the constitution in 1997/1998; (6) that Bishop Goode was never properly appointed to be the assistant senior bishop and therefore could not succeed Senior Bishop Hill; and (7) that, accordingly, the bank is authorized to release the bank accounts in accordance with the direction of the Board.

Goode's first enumeration of error is that no justiciable issue was

ripe for consideration in the court below. We agree.

First, the decision in *First Born I* and entry of the remittitur as the judgment of the trial court effectively ended the case based on the pleadings submitted by the parties. There was nothing left to resolve, and it was error for the court to retain jurisdiction to consider the propriety of the Board's successive attempts to remove Senior Bishop Hill. Goode raised this point at the beginning of the bench trial and objected to proceeding without amended pleadings or a pretrial order.

Neither the bank nor the Board amended the pleadings to assert any other claim. There are no allegations that Hill attempted to write any other checks in the name of the church. Indeed, Bishops Hill, Stevenson and Johnson were the only three bishops on the signature card in 1994 when the initial case was filed, and Hill and Stevenson are now dead. There is no evidence that Goode was ever added to the signature card at the bank. There is no allegation or evidence that Goode attempted to write any checks in the name of the church.

The decision in *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601 (203 SE2d 173) (1974) (*"Giordano II"*), is instructive. In that case, the trial court had denied the defendants' motion for summary judgment on the plaintiffs' claims but certified the decision for review on appeal. In the case's first appearance before the Supreme Court, the Supreme Court reversed that decision and held that the trial court erred in denying the defendants' motion. *Summer-Minter & Assoc. v. Giordano*, 228 Ga. 86 (184 SE2d 152) (1971) (*"Giordano I"*). But before the remittitur became the judgment of the trial court, the plaintiffs amended their complaint alleging basically the same facts but adding an additional allegation of wrongdoing by one of the defendants. *Giordano II*, 231 Ga. at 602. The defendants objected to the amendment. Id. at 603.

In *Giordano II*, the Supreme Court held that its earlier decision disposed of the litigation and that the plaintiffs were not authorized to amend their pleadings. Id. at 605-606. Although the Court's reasoning largely focused on the policy of finality underlying the summary judgment procedure, it made clear that where there has been an adjudication on the merits of the case, the plaintiff is not free to amend its pleadings:

> once the issues are narrowed for trial, the complaint stands only upon those facts adduced at trial by the plaintiff, and once a verdict is returned or a motion for directed verdict is sustained, it is too late to amend even pending remittitur.

(Citations omitted.) Id. at 605.[3] Nor can the court hear additional evi-

---

[3] See also *Kirkland v. Southern Discount Co.*, 187 Ga. App. 453, 454 (1) (370 SE2d 640)

dence that would otherwise affect the finality of the judgment. *Shepherd v. Shepherd*, 243 Ga. 253, 254-255 (253 SE2d 696) (1979); *Smith v. Allen*, 131 Ga. App. 518, 519 (1) (206 SE2d 540) (1974).

The reasoning of *Giordano II* applies here because a party against whom a verdict has been entered is in the same position as a party against whom summary judgment has been granted. See *Giordano II*, 231 Ga. at 604. And, the situation here is even more compelling.

The parties had a bench trial in 1995 on the issues raised in the pleadings. It was a complete adjudication on the merits. The trial judge entered a final order, we reversed and held that Bishop Hill had not been properly terminated in 1994, and the trial court entered the remittitur as the judgment of the court. At that point, the court should have entered final judgment, thereby freeing the bank to honor the checks written by Hill. Instead, no one even attempted to amend the pleadings of the case. The case simply sat dormant until the Board sought to have its subsequent attempts to remove Bishop Hill ratified by the court. At the second bench trial, most of the facts raised had not even occurred when the remittitur was entered. And they involve numerous events in the history of the church from September 1995 through almost the date of the trial in September 1999.

Moreover, there is no evidence in the record that after the first bench trial, the bank was faced with a choice of whether to honor checks signed by Bishop Hill. Although the bank apparently acquiesced in allowing the case to continue, the case took on a decidedly different appearance after the first trip to the Court of Appeals. The dispute over the church property, i.e., checks written on the church account by then Senior Bishop Hill, was, according to the pleadings and not contradicted by the evidence presented at the second trial, completely resolved.[4] The remaining dispute is simply one concerning which of two factions of the church is rightfully in control.

We see no reason to exempt respondents in an interpleader action from the rule that where an earlier decision of this Court completely disposes of the litigation, the parties are not free to raise new issues to keep the case alive.

Second, this Court's decision in *First Born I* is the law of the

---

(1988).

> Just as reversal of the denial of a motion for summary judgment is a decision that summary judgment should be entered, reversal by an appellate court of the trial court's denial of a motion for a directed verdict can mean only that a directed verdict should have been and should be entered. This is tantamount to a reversal with direction, and thus no retrial can be held on those issues.

(Emphasis omitted.) Id.

[4] Although the church funds may have been frozen for years by the order of the court, this does not change the fact that the only property dispute alleged in the pleadings was resolved in 1996.

case. OCGA § 9-11-60 provides that that ruling may not be changed: "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." See also *Jebco Ventures v. City of Smyrna*, 259 Ga. 599, 601-602 (1) (385 SE2d 397) (1989).

The trial court gave two reasons for disregarding the law of the case. First, it noted that although in *First Born I* this Court said the church was "non-hierarchical," the Supreme Court of Georgia in a subsequent decision in a different case held that the First Born Church is hierarchical. See *First Born Church of the Living God v. Hill*, 267 Ga. 633 (481 SE2d 221) (1997). Second, the court stated that "there was new evidence of actions occurring subsequent to the initial order."

The trial court erred by ignoring the law of the case. First, *Hill* was not an appeal of *First Born I*, and it involved different facts, different issues, and different parties from *First Born I*. See *Hill*, 267 Ga. at 633-634. Second, although it did involve the same church, *Hill* did not overrule our holding in *First Born I*.

In *First Born I*, we stated: "The Church is an incorporated non-hierarchical church and its constitution controls its decisions and local Church property." 221 Ga. App. at 740. Regardless of the use of the term "non-hierarchical," the decision in *First Born I* is based on the application of "neutral principles of law" to resolve what was characterized as a property dispute. See, e.g., *Crumbley v. Solomon*, 243 Ga. 343 (254 SE2d 330) (1979). Georgia courts characterize church government as either congregational or hierarchical. Id. As stated by the Supreme Court,

> If the church government is congregational, then a majority of its members control its decisions and local church property. If hierarchical, then we use "neutral principles of law" to determine whether the local church or parent church has the right to control local property. Those "neutral principles" are state statutes, corporate charters, relevant deeds, and the organizational constitutions of the denomination.

Id. Thus, church constitutions are analyzed when the dispute involves hierarchical churches, not congregational.

Furthermore, even if *Hill* changed the law concerning whether the church is hierarchical, and therefore implicitly overruled *First Born I*, *First Born I* is still binding on the parties. See *Dicks v. Zurich American Ins. Co.*, 231 Ga. App. 448 (499 SE2d 169) (1998); *Fulton-DeKalb Hosp. Auth. v. Walker*, 216 Ga. App. 786, 787 (1) (456 SE2d 97) (1995). *Dicks* explains that the law of the case governs the origi-

nal parties even if there has been a change in the law: "The principle in the decision may be reviewed and overruled in another case between different parties, but as between the parties the decision stands as the law of the case. . . ." (Citations and punctuation omitted.) *Dicks*, 231 Ga. App. at 450. Similarly, *Walker* instructed that:

> If the decision of an appellate court thereafter becomes "incorrect" because the law changes — either because of subsequent case law or because of later-enacted statutes — it may not be binding precedent for other situations. However, between the parties to the original decision it remains [binding].

*Walker*, 216 Ga. App. at 787 (1). Finally, although the law of the case may not control "where the evidentiary posture of the case changes after remand by the appellate court," *Lowman v. Advanced Drainage Systems*, 228 Ga. App. 182, 183 (491 SE2d 427) (1997), this Court did not remand this case for further hearings in *First Born I*. As shown above, the case was completely resolved.

It follows that the trial court improperly reconsidered the propriety of the attempted 1994 removal of Senior Bishop Hill and improperly attempted to resolve the conflict between the parties arising out of facts that occurred after the initial decision. The judgment of the trial court is reversed with direction that upon receipt of the remittitur a judgment be entered in accord with the decision of this Court in *First Born I*.

*Judgment reversed. Miller and Mikell, JJ., concur.*

DECIDED FEBRUARY 14, 2001 —
RECONSIDERATION DENIED MARCH 8, 2001 — 

*Hunter, Maclean, Exley & Dunn, Kirby G. Mason, John M. Hatfield, Walter D. Adams*, for appellants.
*Gibson & Spivey, D. Lamar Gibson*, for appellees.