A05A1604. HASKINS et al. v. HASKINS et al.
(629 SE2d 504)

BARNES, Judge.

Drewry E. Haskins III, individually and derivatively for the benefit of Catoosa Bancshares, Inc. ("CBI") (collectively "Drewry Haskins III"), appeals the grant of summary judgment to Joseph M. Haskins, Rebecca Haskins, A. Russell Friberg, Jr., and Catoosa Bancshares, Inc. (collectively "the CBI defendants"). The complaint filed by Drewry Haskins III asserted a derivative action, counts against the CBI defendants directly (seeking an individual recovery for himself, not a derivative recovery for CBI) for having damaged CBI, or for damages caused by the controlling shareholders' breach of their enhanced fiduciary duty to him and other minority shareholders and for conversion. The complaint also sought temporary and permanent restraining orders seeking to halt a proposed reverse stock split of CBI stock.

On appeal, he contends the trial court erred by granting summary judgment to the CBI defendants because CBI is a closely held corporation and what would ordinarily constitute derivative claims can be brought in a direct action in the circumstances of this case. He

also contends he is authorized to bring a direct action because he had a special injury that is separate and distinct from the other stockholders and because his injuries concern more than the price of the shares. We disagree and affirm.

This court reviews a

> trial court's summary judgment rulings under the following standards: To prevail on a motion for summary judgment "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). This burden may be carried by producing evidence which negates an essential element of the nonmoving party's claim, or by pointing out the absence of evidence supporting an essential element of that claim. Id. We review de novo the trial court's ruling on a motion for summary judgment, construing the evidence in the light most favorable to the nonmoving party. *Durben v. American Materials*, 232 Ga. App. 750 (503 SE2d 618) (1998).

*Stoker v. Bellemeade, LLC*, 272 Ga. App. 817, 818 (615 SE2d 1) (2005).

Viewed in this fashion the record shows that Drewry E. Haskins, Jr., the father of Drewry E. Haskins III and Joseph Haskins, was a founder of the bank that ultimately became Capital Bank, and he later established CBI, a bank holding company whose sole asset is Capital Bank.

Later, Drewry E. Haskins, Jr., Drewry Haskins III, Joseph Haskins, and Friberg exchanged their shares of stock in the bank for CBI shares. After the exchange, the shares of CBI were divided as follows: Drewry E. Haskins, Jr., owned 31,137 shares, Drewry Haskins III owned 4,941 shares, Joseph Haskins owned 528 shares, and Friberg owned 100 shares. Although the ownership of some CBI shares was transferred within the family and to a trust created by Drewry E. Haskins, Jr., only the trust, the three Haskins men, members of the sons' families, and Friberg owned CBI stock. As a result of these transfers, Drewry Haskins III held less than 4,000 shares of CBI stock.

Drewry E. Haskins, Jr., and his son Drewry E. Haskins III became estranged several years before the father's death. The son neither visited his father in the hospital nor attended his father's funeral. During this period, Joseph Haskins became more active in the management of the bank and was elected to the board of CBI.

When Drewry E. Haskins, Jr., died, under the terms of his will, his CBI stock was transferred from the trust to Joseph Haskins. Contending that he had an oral agreement with his father for his father to transfer his CBI stock to him upon the father's death, Drewry Haskins III has challenged this transfer. That litigation remains pending in court in Tennessee where the will of Drewry E. Haskins, Jr., was probated, and is not part of this litigation.

After that, Joseph Haskins, his wife Rebecca Haskins, and Friberg, CBI's Board of Directors, approved the redemption of 2,452 shares of CBI common stock from Joseph Haskins for $1,064,168, or $434 per share. This money was used, in part, to pay the estate taxes owed by the estate of Drewry E. Haskins, Jr.

Shortly before this litigation was initiated, the CBI Board of Directors decided to amend CBI's Articles of Incorporation to provide for a 4,000 to one reverse stock split in which one share of new CBI stock would be issued for each 4,000 old shares of CBI stock owned and a buy out of all fractional shares. Instead of receiving fractional shares, a payment of $467 would be paid for each old share of CBI common stock.

After receiving this notice, Drewry Haskins III filed this action asking for temporary and permanent restraining orders prohibiting the CBI Board of Directors from holding the meeting and approving the reverse stock split. The verified complaint alleged that Joseph Haskins totally dominated and controlled CBI and that he had breached his fiduciary duties to the other shareholders and as a result, CBI and the minority shareholders had suffered damages. In particular, the complaint alleged that Drewry Haskins III had suffered damages as a result of Joseph Haskins's breaches of fiduciary duties, conversion, and oppression of the minority shareholders, that he had suffered individual damages as a result of the conversion, and that he was entitled to punitive damages. After first granting the temporary restraining order, the trial court ultimately dissolved it.

After the temporary restraining order was dissolved, the CBI Board of Directors met and approved the reverse stock split, even though Drewry Haskins III and his family voted against the action. Following the reverse stock split, the number of shares of CBI stock was reduced from 200,000 shares of old stock to 50 shares of new stock. Joseph Haskins became the only shareholder of CBI. Because the shares of old stock of Drewry Haskins III and his family were reduced to fractional shares of new stock, those shares were required to be exchanged for cash. The CBI Board of Directors sent notice to Drewry Haskins III and members of his family who owned CBI stock

under OCGA § 14-2-1322.[1] Because the resolution only offered to pay $427 per share of the old stock, however, Drewry Haskins III and his family rejected the offer and CBI filed a petition under OCGA § 14-2-1330[2] to determine the fair market value of the old stock shares ("the dissenter case"). In connection with this proceeding, CBI paid $2,508,625 into the registry of the court, and Drewry Haskins III and the members of the family later surrendered all of their CBI shares and withdrew the full amount of the money paid into the registry.

The CBI defendants then moved for summary judgment asserting that because the dissenter case had been filed and Drewry

---

[1] Dissenters' notice:
(a) If proposed corporate action creating dissenters' rights under Code Section 14-2-1302 is authorized at a shareholders' meeting, the corporation shall deliver a written dissenters' notice to all shareholders who satisfied the requirements of Code Section 14-2-1321. (b) The dissenters' notice must be sent no later than ten days after the corporate action was taken and must: (1) State where the payment demand must be sent and where and when certificates for certificated shares must be deposited; (2) Inform holders of uncertificated shares to what extent transfer of the shares will be restricted after the payment demand is received; (3) Set a date by which the corporation must receive the payment demand, which date may not be fewer than 30 nor more than 60 days after the date the notice required in subsection (a) of this Code section is delivered; and (4) Be accompanied by a copy of this article.

[2] Court action:
(a) If a demand for payment under Code Section 14-2-1327 remains unsettled, the corporation shall commence a proceeding within 60 days after receiving the payment demand and petition the court to determine the fair value of the shares and accrued interest. If the corporation does not commence the proceeding within the 60 day period, it shall pay each dissenter whose demand remains unsettled the amount demanded. (b) The corporation shall commence the proceeding, which shall be a nonjury equitable valuation proceeding, in the superior court of the county where a corporation's registered office is located. If the surviving corporation is a foreign corporation without a registered office in this state, it shall commence the proceeding in the county in this state where the registered office of the domestic corporation merged with or whose shares were acquired by the foreign corporation was located. (c) The corporation shall make all dissenters, whether or not residents of this state, whose demands remain unsettled parties to the proceeding, which shall have the effect of an action quasi in rem against their shares. The corporation shall serve a copy of the petition in the proceeding upon each dissenting shareholder who is a resident of this state in the manner provided by law for the service of a summons and complaint, and upon each nonresident dissenting shareholder either by registered or certified mail or statutory overnight delivery or by publication, or in any other manner permitted by law. (d) The jurisdiction of the court in which the proceeding is commenced under subsection (b) of this Code section is plenary and exclusive. The court may appoint one or more persons as appraisers to receive evidence and recommend decision on the question of fair value. The appraisers have the powers described in the order appointing them or in any amendment to it. Except as otherwise provided in this chapter, Chapter 11 of Title 9, known as the Georgia Civil Practice Act," applies to any proceeding with respect to dissenters' rights under this chapter. (e) Each dissenter made a party to the proceeding is entitled to judgment for the amount which the court finds to be the fair value of his shares, plus interest to the date of judgment.

Haskins III and his family had surrendered their shares, Drewry Haskins III no longer had standing to pursue the derivative action against the CBI defendants and that any special injury that Drewry Haskins III asserted should properly be considered in the dissenter case. Drewry Haskins III responded contending that he had standing to pursue the case because he had suffered a special injury before adoption of the reverse stock split and his injuries were different and distinct from the value of the shares and from the other shareholders. Although initially orally denying the motion, the trial court ultimately granted the motion. The trial court's order recites

> [a]fter hearing argument from Defendants in support of the motion and Plaintiff in opposition thereto and after due consideration to the pleadings, arguments and citation of authority cited by both parties and taking into account the fact that the positions and contentions asserted by Plaintiff in this Derivative Action are likewise asserted in their Counterclaim in the Statutory Appraisal action still pending before this Court,

> IT IS THEREFORE, hereby ordered and adjudged that Defendants' motion for Summary Judgment be and the same is hereby granted.

This appeal followed.

1. Although the CBI defendants' argument that Drewry Haskins III could not maintain this case as a direct action because CBI was not a statutory closely held corporation was apparently accepted by the trial court when it granted their motion, that is not our law. In *Stoker v. Bellemeade, LLC,* supra, 272 Ga. App. at 823 (3), this court held that "a direct action is proper in the context of a close corporation where the exceptional circumstances found in *Thomas[ v. Dickson],* 250 Ga. 772 [(301 SE2d 49) (1983)], are present, even though the corporation was not created pursuant to OCGA § 14-2-901 et seq." Id. Nevertheless, a correct decision of a trial court will not be reversed, regardless of the reasons stated. *Ramey v. Hosp. Auth. of Habersham County,* 218 Ga. App. 618, 619 (1) (462 SE2d 787) (1995).

We find it unnecessary to consider whether the *Thomas* exceptional circumstances are present in this case because Drewry Haskins III cannot maintain a direct action against the CBI defendants for another reason. Our Supreme Court held in *Grace Bros., Ltd. v. Farley Indus.,* 264 Ga. 817, 820-821 (3) (450 SE2d 814) (1994), that the statutory appraisal remedy in OCGA § 14-2-1302 (b), is the exclusive remedy when the dispute is essentially about the price of the stock. "A remedy beyond the statutory procedure is not available

where the shareholder's objection is essentially a complaint regarding the price which he receives for his shares." (Citations and punctuation omitted.) Id. at 821 (3). The court further held that the only exceptions to this rule are the failure to comply with procedural requirements or the corporation's articles of incorporation or bylaws or the vote to obtain the required approval was obtained by fraudulent or deceptive means, and, in this sense, fraudulent means actual fraud. Id. at 820-821.

Drewry Haskins III has not asserted that CBI's Board of Directors failed to comply with procedural requirements or the corporation's articles of incorporation or bylaws in securing approval of the reverse stock split, nor has he asserted that the vote to obtain the approval of the reverse stock split was obtained through fraudulent or deceptive means. Therefore, he must justify maintaining this case as a direct action by establishing that it is more than a dispute over the price of his stock. To determine whether he has done so, we must look to the allegations of his complaint. See *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 585 (1) (397 SE2d 699) (1990).

In his complaint Drewry Haskins III primarily alleges three things that the CBI defendants did wrong: (1) they acted even though the issue concerning the ownership of the stock raised by his reliance on the alleged promise by his father was unresolved; (2) they redeemed Joseph Haskins's shares to which he claims ownership; and (3) the proposed reverse stock split would freeze out minority shareholders. His main effort was directed toward obtaining temporary and permanent restraining orders to stop the board meeting during which the reverse stock split would be considered. After that effort ultimately failed, he has not amended his complaint to assert new claims against the CBI defendants.

His complaint is replete with general allegations that he has suffered injuries separate and apart from the other shareholders, but his allegations do not demonstrate how this is true. "[A] 'special injury,' [is] an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder which exists independently of any right of the corporation. [Cit.]" *Grace Bros., Ltd. v. Farley Indus.*, supra, 264 Ga. at 819 (2). Drewry Haskins III has asserted no such injuries. The one issue in which he is truly different from the other shareholders is his claim to the shares held by Joseph Haskins under the terms of their father's will. That issue, however, is beyond the jurisdiction of the courts of Georgia, and cannot be decided in this litigation. Drewry Haskins III does not argue to the contrary.

In his reply brief in this court, his whole effort toward demonstrating why his claim is not just limited to the price of the stock consists of the following: "But this case is not about the price of Drew's

shares in CBI. The ownership of the shares is still in dispute in the [Tennessee] litigation. There are genuine issues of material fact that do not relate to the value of the stock and the trial court erred in granting the motion for summary judgment." We find no factual support for this bare argument. His complaints apply solely to the price of the stock. Misappropriation of corporate funds is primarily of a derivative nature. *Thomas v. Dickson*, supra, 250 Ga. at 774.

Drewry Haskins III also argues that this action is authorized because he has suffered a special injury separate and distinct from the other stockholders, but we also find no support for his contentions. He asserts that his claim is separate and distinct because his brother engaged in self-dealing and conversion by paying himself a dividend in the form of the redemption of some of his shares, but his complaint further alleges that by doing so Joseph Haskins "breached his fiduciary duty to minority shareholders." Therefore, even assuming that there was self-dealing and conversion, the injury was not just to Drewry Haskins III. Further, if these assertions are accurate, the impact of the alleged actions of Joseph Haskins would be on the value of CBI's stock in general and not just to the shares held by Drewry Haskins III.

Drewry Haskins III also complained in Section VII of his complaint that the reverse stock split was to "freeze out" all minority shareholders. Moreover, his allegations again show that his underlying complaint is that the reverse stock split was approved at a time that his litigation in Tennessee was still unresolved. For the reasons stated above, this is not a sufficient reason to permit this action as an exception to the appraisal process.

His contention that his claims are not just about the price of his stock because his "complaints center on control of CBI and ownership of the company" does not authorize departing from the statutory appraisal remedy. Nothing in this litigation addresses that issue, and his argument plainly shows that this claim is beyond the scope of this litigation because it is based upon the alleged promise by Drewry E. Haskins, Jr., to transfer his interest in the bank to Drewry Haskins III. Whether that alleged promise is valid and enforceable is beyond the jurisdiction of this court because it is pending in the courts of Tennessee. Therefore, that dispute provides no basis for maintaining this case as a direct action.

2. Because Drewry Haskins III has redeemed his shares in CBI, he no longer has standing to maintain a derivative action because the " 'commenced or maintained' language in the shareholders' derivative statute, OCGA § 14-2-741, requires a continuation of shareholder status throughout litigation." (Citations omitted.) *Grace Bros.,*

*Ltd. v. Farley Indus.*, supra, 264 Ga. at 818 (1). Therefore, this enumeration of error is without merit and the trial court must be affirmed.

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED MARCH 28, 2006 —

*Clifton M. Patty, Jr.*, for appellants.

*Gershiser & Peters, R. Wayne Peters, William D. Cunningham*, for appellees.