**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 19, 2018**

# In the Court of Appeals of Georgia

A18A0578. I. A. GROUP, LTD, et al. v. RMNANDCO, INC.

DILLARD, Chief Judge.

I. A. Group Limited Company and Stephan Fitch (collectively, "the appellants") appeal the trial court's denial of their motion for summary judgment in RMNANDCO, Inc.'s action against them, in which it asserted various business-related tort claims, as well as the trial court's reinstatement of a damages award to RMNANDCO, which had been reversed by this Court in a prior appeal. Specifically, the appellants argue that the trial court erred in denying their motion for summary judgment because RMNANDCO lacked standing to bring direct claims against them and the trial court was unauthorized to reinstate the judgment. For the reasons set forth *infra*, we affirm in part, reverse in part, and remand the case with direction.

When this case was previously before us in *I. A. Group Co. v. RMNANDCO, Inc.*[1] ("*I. A. Group I*"), we reversed a jury verdict in favor of RMNANDCO because the trial court erroneously instructed the jury on joint and several liability, rather than on apportionment.[2] In the case giving rise to *I. A. Group I*, RMNANDCO sued I. A. Group, Fitch, CX5 Capital Corporation, and Christopher Collins[3] (collectively, "the defendants"), asserting several claims, including breach of fiduciary duty, fraud, and violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO").[4] Due to discovery abuses by the defendants, the trial court struck their answers, counterclaims, and third-party complaints, and entered a default judgment as to liability on all counts.[5] As a result of the default judgment, the only issue remaining for trial was a determination of unliquidated damages.[6] Following a jury trial solely on damages, the jury awarded $2,500,000 in compensatory damages,

---

[1] 336 Ga. App. 461 (784 SE2d 823) (2016).

[2] *See id*. at 462-64 (1).

[3] Collins and CX5 Capital Corporation are not parties to the instant appeal, nor were they parties in *I. A. Group I. See I. A. Group I*, 336 Ga. App. at 461 n.1.

[4] *See I. A. Group I*, 336 Ga. app. at 461.

[5] *See id.*

[6] *See id.*

jointly and severally against the defendants, as well as attorney fees.[7] And finding

specific intent to harm, the jury also awarded $10,000,000 in punitive damages

against Fitch.[8] Thereafter, each defendant retained new counsel and filed separate

motions for new trial, all of which were denied.[9]

I. A. Group and Fitch appealed, raising several arguments, including that the

damages award must be reversed because the trial court improperly instructed the jury

that damages should be awarded jointly and severally among the four defendants,

rather than based on apportionment of fault.[10] In *I. A. Group I*, this Court agreed that

the jury instruction was erroneous, holding that I. A. Group, Fitch, and the other

defendants were entitled to a new trial.[11] And given our reversal of the final judgment

and remand for a new trial, we did not address most of I. A. Group's remaining

enumerations of error.[12] On remand, the appellants filed a motion for summary

---

[7] *See id.*

[8] *See id.*

[9] *See id.*

[10] *See id.* at 462 (1).

[11] *See id.* at 464 (1).

[12] *See id.* Specifically, in *I. A. Group I*, we characterized the appellants' claims of error as follows:

3

judgment, arguing that RMNANDCO's claims must be dismissed as a matter of law because the well-pleaded facts in its complaint and amended complaint establish that this lawsuit should have been brought as a derivative action, rather than a direct action. But before the trial court ruled on that motion, RMNANDCO filed a motion to reinstate the original damages award and hold a new trial solely for the jury to

> [The appellants] contend that the trial court erred in its jury instructions and jury verdict form because the jury should have been instructed on apportionment of damages rather than joint and several liability; in prohibiting them from challenging issues related to liability and damages; in admitting hearsay evidence of damages over objection; and in failing to rule on their motion for arbitration. *Id.* at 461.

Then, in a footnote, we further explained:

> RMNANDCO contends that damages may not be apportioned under RICO, and I A. Group and Fitch contend that RMNANDCO's complaint is not well-pleaded because this should have been brought as a derivative action rather than direct. As these matters are not central to our decision, we do not address them on appeal and leave them for the trial court to address in the first instance should they be raised during the new trial proceedings. *See id.* at 464 (3) n.6.

Other than the apportionment error, the only other issue addressed by this Court was the appellants' claim that the trial court erroneously failed to rule on their motion for arbitration, and we rejected that claim. *See id.* at 464 (2).

apportion those damages among the defendants. This motion was based on a decision issued by the Supreme Court of Georgia after our decision in *I. A. Group I*, but before the new trial ordered by this Court was held by the trial court.

Specifically, following *I. A. Group I*, the Supreme Court of Georgia decided *Martin v. Six Flags Over Georgia II, L.P.*,[13] in which it addressed the appropriate means for correcting a trial court's apportionment error when there are no other outstanding issues.[14] Ultimately, our Supreme Court concluded that the apportionment error in *Martin* required a new trial *only* on apportionment, rather than a new trial on liability and damages.[15] So, relying on *Martin*, RMNANDCO argued to the trial court that, despite our reversal of the jury's verdict and grant of a new trial on damages, it should reinstate the judgment and hold a new trial solely for the jury to apportion the compensatory damages among the defendants. And following a hearing, the trial court issued an order, denying I. A. Group's motion for summary judgment, granting RMNANDCO's motion to reinstate the prior judgment, and scheduling the case for retrial solely on the issue of apportionment. Thereafter, the trial court granted the

---

[13] 301 Ga. 323 (801 SE2d 24) (2017).

[14] *See id.* at 336-40 (III).

[15] *See id.*

5

appellants' request for a certificate of immediate review. We then granted the appellants' petition for an interlocutory appeal, and this appeal follows.

1. The appellants first argue that the trial court erred in denying their motion for summary judgment because RMNANDCO's complaint and amended complaint establish that it was required to bring a derivative, rather than a direct, action against them, and thus, the default judgment did not result in their admission of liability. We disagree.

When, as here, a question of law is at issue we "owe no deference to the trial court's ruling and apply a de novo standard of review."[16] Further, while the appellants couch their argument in terms of the sufficiency of the allegations in the complaint and amended complaint, whether a shareholder plaintiff is authorized to bring a direct action is, of course, a matter of standing.[17] And as we have explained, a derivative suit

---

[16] *Venable v. SunTrust Bank*, 335 Ga. App. 344, 345 (780 SE2d 793) (2015) (punctuation omitted).

[17] *See, e.g.*, *Grace Bros. v. Farley Indus., Inc.*, 264 Ga. 817, 818 (1) (450 SE2d 814) (1994) ("The law is well settled that a former shareholder in a merged corporation has no standing to maintain a shareholder's derivative action."); *Crittenton v. Southland Owners Ass'n, Inc.*, 312 Ga. App. 521, 525 (2) (718 SE2d 839) (2011) (holding that because the plaintiffs' claims were derivative in nature, they had "no standing to bring a direct action based on those claims"); *Haskins v. Haskins*, 278 Ga. App. 514, 520 (2) (629 SE2d 504) (2006) (holding that a shareholder of a company no longer had standing to bring a derivative action because

6

is brought "on behalf of [a] corporation for harm done to it and any damages recovered are paid to the corporation."[18] Thus, to have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must "allege more than an injury resulting from a wrong to the corporation."[19] In this respect, the Supreme Court of Georgia has held that "[t]he failure to assert a plaintiff's alleged lack of standing prior to the entry of judgment results in the waiver of such

---

he had redeemed his shares in the company); *Parks v. Multimedia Techs., Inc.*, 239 Ga. App. 282, 288 (520 SE2d 517) (1999) (affirming the trial court's finding that a shareholder had "standing to pursue direct claims against [the defendant] for breach of fiduciary duty, misappropriation of corporate opportunities, conversion, and tortious interference").

[18] *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 816 (1) (720 SE2d 270) (2011) (punctuation omitted); *accord Sw. Health & Wellness, L.L.C. v. Work*, 282 Ga. App. 619, 624 (2) (b) (639 SE2d 570) (2006).

[19] *McWhorter*, 312 Ga. App. at 816 (1); *accord Crittenton*, 312 Ga. App. at 524 (2).

defense."[20] In one case, our Supreme Court explained the reasons for allowing the waiver of a standing objection as follows:

> The timely assertion of a standing defense is necessary to prevent precisely what happened here. Discovery, a pretrial conference and order, and a fairly lengthy trial consumed judicial as well as private resources unnecessarily, if plaintiff had no capacity to pursue this claim. It is primarily a threshold question and generally collateral to the real issues. The object of lawsuits is to resolve merits of disputes, not to engage in a meaningless frustration of them.[21]

Additionally, the purpose of requiring that affirmative defenses be pleaded is to "prevent surprise and to give the opposing party fair notice of what he must meet as

---

[20] *Lewis v. Van Anda*, 282 Ga. 763, 765 (1) (653 SE2d 708) (2007); *see Calliope Props., LLC v. Fulton Cty. Bd. of Assessors*, 313 Ga. App. 795, 796 (723 SE2d 34) (2012) (holding that the defendant waived any opposition to the plaintiff's standing as the real party in interest because the issue was not raised until after the trial court entered a judgment on the merits of the case); *Rome Hous. Auth. v. Allied Bldg. Materials, Inc.*, 182 Ga. App. 233, 237 (2) (355 SE2d 747) (1987) (holding that a "real-party-in-interest" objection was waived when it was raised for the first time following judgment in a motion for a new trial); *Dorsey Heating & Air Conditioning Co. v. Gordon*, 162 Ga. App. 608, 610 (292 SE2d 452) (1982) (holding that a trial court erred in directing a verdict in favor of the defendant based on a plaintiff's lack of standing when that defense was not properly raised in a pleading).

[21] *Lewis*, 282 Ga. at 765 (1) (punctuation omitted), *quoting Adams v. Cato*, 175 Ga. App. 28, 28 (1) (332 SE2d 355) (1985).

8

a defense."[22] Thus, if it is not pleaded, it is "generally held that the [standing] defense is waived."[23]

Here, when the default judgment as to liability was entered, all of the responsive pleadings in which the appellants could have raised a standing defense were stricken as a sanction for discovery violations. And regardless, none of those pleadings specifically asserted, as I. A. Group does now, that RMNANDCO was required to bring its claims in a derivative-shareholder's action. Indeed, while Fitch's amended answer—which again, was also stricken—asserted generally that RMNANDCO lacked standing to sue, he did not provide any specific basis for that claim. Furthermore, after the trial court entered the default judgment, the appellants filed motions to vacate the judgment, but neither I. A. Group nor Fitch argued that the judgment should be vacated due to RMNANDCO's lack of standing. Instead, they both argued that the judgment should be vacated because they had made diligent efforts to comply with discovery requests. But ultimately, the default judgment was

_____

[22] *Early v. MiMedx Grp., Inc.*, 330 Ga. App. 652, 655 (1) (a) (768 SE2d 823) (2015) (punctuation omitted); *accord Hardy v. Ga. Baptist Health Care Sys., Inc.*, 239 Ga. App. 596, 596 (1) (521 SE2d 632) (1999).

[23] *Early*, 330 Ga. App. at 655 (1) (a) (punctuation omitted); *accord Hardy*, 239 Ga. App. at 596 (1).

9

not vacated, and this Court denied I. A. Group's application for an interlocutory appeal from that judgment. Given these particular circumstances, the appellants waived their standing defense by failing to raise it prior to the entry of the default judgment.[24]

In their reply brief, the appellants appear to concede that the first time they raised their standing argument was on appeal to this Court in *I. A. Group I* following the default judgment and the jury verdict on damages. But they contend that their liability has not been established because a default judgment "operates only as a

---

[24] *See Gerschick & Assocs., P.C. v. Pounds*, 266 Ga. App. 852, 855 (1) (a) (598 SE2d 522) (2004) ("[T]he failure to assert this affirmative defense in an answer or motion prior to suffering a default judgment acts as a waiver of the defense." (punctuation omitted)); *Dunn v. Ceccarelli*, 227 Ga. App. 505, 509 (1) (a) n.4 (489 SE2d 563) (1997) ("If the defendant does not assert that the claim was derivative, the court may treat the action as properly brought." ) (physical precedent only); *see also supra* notes 20-23 & accompanying text. *But see Dunaway v. Parker*, 215 Ga. App. 841, 845 (1) (453 SE2d 43) (1994) (addressing and ruling upon the propriety of the plaintiff's direct action when it was not raised until a motion for a new trial following the verdict "since interests other than those of defendant are at stake, i.e., the rights of corporate creditors and possibly shareholders not parties to [the] action"). We note that, unlike in *Dunaway*, the appellants, here, first raised their standing defense on appeal in *I. A. Group I*, but did not raise their standing argument *in the trial court* until *after* this Court had already affirmed the default judgment in *I. A. Group I. See Hart v. Groves*, 311 Ga. App. 587, 588 (1) (716 SE2d 631) (2011) ("This is a Court for correction of errors below, and, *in the absence of a ruling by the trial court*, this Court has nothing to review." (punctuation omitted) (emphasis supplied)).

defendant's admission of the truth of a complaint's well-pleaded allegations." But as previously explained, whether a plaintiff can maintain a direct, rather than derivative, lawsuit against a defendant is a matter of *standing*, not a matter of whether a complaint is sufficient to state a valid claim. And the appellants have never argued that the complaint failed to adequately plead the elements of any particular claim, including when they moved to vacate the default judgment or when they appealed the judgment in *I. A. Group I*. Regardless of how the appellants characterize their claim of error, in substance, they challenge RMNANDCO's *standing* to sue, and as explained *supra*, standing defenses are waived if they are not asserted prior to the judgment.[25]

Nevertheless, the appellants further argue they should be permitted to challenge RMNANDCO's standing at this late stage in the litigation because *I. A. Group I* reversed the default judgment and specifically instructed the trial court to consider whether RMNANDCO could maintain a direct action against them. They are mistaken. Indeed, there is nothing in *I. A. Group I* to suggest that this Court reversed the default judgment on liability or that the new trial would exceed the scope of the

---

[25] *See supra* notes 20-24 & accompanying text. *Cf. Robinson v. Glob. Res., Inc.*, 300 Ga. App. 139, 140 (684 SE2d 104) (2009) (noting that this Court evaluates pleadings by their *content* not by their name).

11

original trial, which was limited to the issue of damages. In *I. A. Group I*, this Court did not even address the validity of the default judgment or the propriety of the sanctions that gave rise to the judgment.[26] The sole basis for our reversal of the damages award was an erroneous jury instruction on the allocation of damages, which had no bearing on the default judgment or the trial court's imposition of sanctions.[27]

Although the judgment line of *I. A. Group I* merely said "reversed," the substance of the opinion made clear that only the damages award was being reversed.[28] Indeed, in ruling on the apportionment error in *I. A. Group I*, this Court rejected the appellants' argument that a jury could not apportion fault because "no trier of fact determined the defendants' respective fault in the entry of the default judgment."[29] In doing so, we explained that

> [w]hile it is correct that a default concludes the defendant's liability and estops him from offering any defenses which would defeat the right of recovery, and that any argument that goes to liability for the damages and not the amount of damages awarded is not permitted, assessment of

---

[26] *See generally I. A. Group I*, 336 Ga. App. at 462-64 (1).

[27] *See generally id.*

[28] *See generally id.*

[29] *Id.* at 463 (1).

12

fault for purposes of apportioning damages between the defendants in the instant context does not violate that rule.[30]

Thus, because we held that apportionment of fault was still permitted, even though *liability* had been established in a default judgment, rather than by a trier of fact, we necessarily affirmed the trial court's imposition of sanctions and the resulting default judgment.

The appellants rely heavily on a footnote in *I. A. Group I*, in which this Court acknowledged the appellants' standing argument and noted that the trial court could address it upon remand if it was raised in the new-trial proceedings,[31] but we did not address the merits of the claim or whether it had been waived.[32] We simply declined to address the issue. If this Court *had* reviewed the appellants' standing argument, we would have reviewed the record, followed our well-established precedent, and deemed the standing defense waived because it was neither raised nor ruled upon in

---

[30] *Id*. at 463-64 (1) (punctuation and citations omitted).

[31] *See id.* at 464 (3) n.6; *supra* note 12.

[32] *See id.* at 464 (3) n.6.

the trial court prior to *I. A. Group I*.[33] And because the appellants' motion for summary judgment was summarily denied, it is unclear whether the trial court rejected the motion on the merits or denied it because the appellants' standing defense had been waived. But we conduct a *de novo* review of the law and the evidence when considering a trial court's grant or denial of a motion for summary judgment, and "affirm the court's grant of the motion if it is right for any reason."[34] Thus, regardless of the trial court's reasoning for denying the appellants' motion for summary judgment, it did not err in doing so for the reasons discussed in this opinion.

2. The appellants next argue that the trial court erred by reinstating the damages award, even though it had been reversed by this Court, and finding that, based on the Supreme Court of Georgia's decision in *Martin*,[35] only a new trial on apportionment was required. We agree.

---

[33] *See Pfeiffer v. Ga. Dep't of Transp*., 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. . . . Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. . . . Therefore, absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal." (punctuation and footnotes omitted)).

[34] *Georgia-Pac., LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013).

[35] *See supra* note 13.

Specifically, the appellants raise several arguments, including that regardless of whether *Martin* applies to the facts of this case, the trial court and this Court are bound by our reversal of the judgment because *I. A. Group I* is "law of the case." In relevant part, the Supreme Court of Georgia has explained that

> [u]nder the 'law of the case' rule, any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings *in that case* in the lower court and in the Supreme Court or the Court of Appeals, as the case may be. Georgia's appellate courts are required to adhere to the law of the case rule in all matters which they consider.[36]

---

[36] *Hicks v. McGee*, 289 Ga. 573, 577-78 (2) (713 SE2d 841) (2011) (punctuation omitted); *accord Sec. Life Ins. Co. of Am. v. Clark*, 273 Ga. 44, 46 (1) (535 SE2d 234) (2000). This principle of law is codified at OCGA § 9-11-60 (h), which provides that

> [t]he law of the case rule is abolished; but generally judgments and orders shall not be set aside or modified without just cause and, in setting aside or otherwise modifying judgments and orders, the court shall consider whether rights have vested thereunder and whether or not innocent parties would be injured thereby; provided, however, that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings *in that case* in the lower court and in the Supreme Court or the Court of Appeals as the case may be. (Emphasis supplied).

15

And even when the law subsequently changes, "appellate rulings remain binding as between parties to a case, so long as the evidentiary posture of the case remains unchanged, despite all contentions that prior rulings in the matter are erroneous."[37] Put another way, even "[i]f the decision of an appellate court thereafter becomes 'incorrect' because the law changes—either because of subsequent case law or because of later-enacted statutes—it may not be binding precedent for other situations[,] [but], . . . between the parties to the original decision it remains the law of the case."[38]

As previously explained, *Martin* was decided following *I. A. Group I*, but before the trial court conducted the new trial ordered by us in this case. And *Martin*, similarly to *I. A. Group I*, held that there was an apportionment error at trial and

---

[37] *Hicks*, 289 Ga. at 578 (2) (punctuation omitted); *accord Clark*, 273 Ga. at 46 (1); *see Rymer v. Polo Golf & Country Club Homeowners Ass'n, Inc.*, 335 Ga. App. 167, 170 (1) (a) (780 SE2d 95) (2015) ("If . . . subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that such change would otherwise mandate. The posture of the case can be changed by an amendment to the complaint or by the submission of additional evidence." (punctuation and citation omitted)).

[38] *See Atlanta Women's Health Grp., P.C. v. Clemons*, 299 Ga. App. 102, 106 (681 SE2d 754) (2009) (punctuation omitted); *accord Fulton-DeKalb Hosp. Auth. v. Walker*, 216 Ga. App. 786, 787 (1) (456 SE2d 97) (1995).

16

remanded the case for further proceedings.[39] In *Martin*, the Supreme Court affirmed

the jury's verdict as to liability and damages and remanded the case for a retrial *solely*

for the apportionment of those damages.[40] But in *I. A. Group I*, without the benefit of

*Martin*, this Court affirmed the default judgment as to liability, reversed the damages

award, and remanded the case for a new trial on damages with instructions that the

trial court properly charge the jury on apportionment.[41] Nevertheless, upon remand,

the trial court reinstated the damages award based on its finding that, in light of

*Martin*, it need only impanel a jury to apportion the damages that had already been

awarded to RMNANDCO.[42]

---

[39] *See Martin*, 301 Ga. at 341 (III); *I. A. Group I*, 336 Ga. App. at 464 (1).

[40] *See Martin*, 301 Ga. at 341 (III).

[41] *See I. A. Group I*, 336 Ga. App. at 464 (1).

[42] To its credit, the trial court expressed uncertainty as to its decision to reinstate a judgment that had been reversed by this Court:

As a judge, I want to do the right thing. It's my job to get it right. And obviously the Court of Appeals has told us what they think and we've got the Supreme Court with the *Martin* decision. I disagree on that. I think with the issues in front of me, I would like some guidance from the appellate courts. I really would. Because what we . . . don't want to do is keep trying the case over and over. I want to get it right. So I think there's some validity in [RMNANDCO's] request [to reinstate the

17

In this appeal, the parties disagree as to whether *Martin* is sufficiently distinguishable from the facts and circumstances of this case such that reinstatement of the verdict was unauthorized. But we need not decide that issue. Indeed, even if the facts and circumstances of this case were *exactly* like those in *Martin* (which they are not) and the holding in *Martin* renders our decision to grant a new trial in *I. A. Group I* incorrect, we are still bound by our prior decision *in this case* between *these parties* to grant a new trial on damages because it is law of the case.[43]

The only circumstance in which we are not bound by any previous ruling in the same case is when the evidentiary posture changes in the trial court.[44] Here, although RMNANDCO argues at length that we should *not* follow *I. A. Group I* and affirm the

judgment]. So what I will do is this: I will deny the motion for summary judgment. I will reinstate the judgment[,] and I will grant your reinstatement and immediate review and take both issues up [to the Court of Appeals]. And whatever issues that, quite frankly, . . . stay here I'm going to have to come back and retry whatever I have to retry, then I'll have a road map.

[43] *See supra* notes 36-38 & accompanying text.

[44] *See Maree v. Phillips*, 274 Ga. 369, 371 (3) (552 SE2d 837) (2001) ("Under the 'law of the case rule,' that decision is binding in all subsequent proceedings in the trial court and in our appellate courts, absent a change in the evidentiary posture of a case."); *supra* note 37 & accompanying text.

18

trial court's reinstatement of the judgment, it also argues that, upon remand, *I. A. Group I* is law of the case to the extent that this Court, in its view, held that the damages may *only* be apportioned to "the original four defendants."[45] In support, RMNANDCO agrees that the procedural posture of the case has *not* changed since *I. A. Group I*. But if *I. A. Group I* is binding on the trial court in any ancillary respect because it is law of the case, we fail to see how its ultimate holding to reverse the judgment and grant a new trial is not. In any event, both parties agree that the procedural posture of this case has not changed because, upon remand, no pleadings

---

[45] In *I. A. Group I*, we did not consider or expressly rule on whether the apportionment of damages must be limited to the original four defendants at the second trial. *See generally I. A. Group I*, 336 Ga. App. at 462-64 (1). RMNANDCO now argues that, because *I. A. Group I* is law of the case, the appellants are barred from requesting that the jury consider apportioning fault to anyone else besides the original four defendants. But at the first trial, the court erroneously rejected the appellants' argument that there should be *any* apportionment of fault, so they had no opportunity to argue that fault should be apportioned to anyone other than the defendants. As a result, that issue was also not before this Court on appeal. Nevertheless, in contending that this Court has already ruled on this issue, RMNANDCO relies heavily on one sentence in *I. A. Group I*, which held that apportionment of damages "between the defendants" was not prohibited merely because there was a default judgment, rather than a jury verdict on liability. *See id* at 463-64 (1). We disagree that this one reference to "the defendants" constituted a holding one way or the other regarding whether apportionment of fault to other parties or nonparties was permissible. And we have held that the law-of-the-case rule "applies only to actual *decisions*, not to issues raised by the parties but never ruled upon." *Parks v. State Farm Gen. Ins. Co.*, 238 Ga. App. 814, 815 (1) (520 SE2d 494) (1999).

19

were amended and no additional evidence was submitted.[46] Thus, regardless of whether *Martin* rendered our grant of a new trial in *I. A. Group I* incorrect, our decision to do so is binding in this case between these parties, and the court erred in reinstating the judgment.[47]

---

[46] *See Rymer*, 335 Ga. App. at 170 (1) (a) ("The posture of [a] case can be changed by an amendment to the complaint or by the submission of additional evidence."); *Choate Const. Co. v. Auto-Owners Ins. Co.*, 335 Ga. App. 331, 337 (1) (779 SE2d 465) (2015) ("[T]he evidentiary posture of a case changes so as to bar application of the law-of-the-case rule in two different situations. First, the evidentiary posture of a case changes when a new issue that the appellate court has not addressed is raised by amended pleadings or otherwise. Second, the evidentiary posture of a case changes when the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented" (punctuation and footnotes omitted)); *Martell v. Atlanta Biltmore Hotel Corp.*, 120 Ga. App. 880, 882-83 (172 SE2d 842) (1969) ("While the holding in this case on its previous appearance before this [C]ourt may be reviewed and overruled in another case, as between these parties it must stand.").

[47] *See First Born Church of Living God, Inc. v. Bank of Am., N.A.*, 248 Ga. App. 500, 504 (546 SE2d 1) (2001) (holding that, even if a decision by our Supreme Court changed the law and implicitly overruled a prior decision of this Court, this Court's decision was nevertheless binding as to any subsequent proceedings in that same case); *Walker*, 216 Ga. App. at 787-88 (1) (holding that, despite a recent decision of the Supreme Court of Georgia, which reached a different holding, the prior decision of this Court, although now incorrect, was still binding on this Court and the trial court in subsequent proceedings in the same case).

For all these reasons, we affirm the trial court's denial of the appellants' motion for summary judgment, reverse its order reinstating the damages award, and remand for a new trial on damages in compliance with the instructions given in *I. A. Group I.*

*Judgment affirmed in part, reversed in part, and case remanded with direction. Doyle, P. J. and Mercier, J., concur*.