**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN, P. J., and REESE, J.**

July 17, 2019

# In the Court of Appeals of Georgia

A19A0040.  OCONEE  FEDERAL  SAVINGS  AND  LOAN
ASSOCIATION v. BROWN et al.

MCMILLIAN, Presiding Judge.

Kenneth A. Brown and April M. Brown sued Oconee Federal Financial
Corporation and Oconee Federal Savings and Loan Association (collectively,
"Oconee Federal"), Brian C. Ranck, and Sanders, Ranck & Skilling P. C. (collectively
"the Ranck defendants") alleging numerous causes of actions arising from the
couple's failed attempt to modify certain loans and Oconee Federal's attempted
foreclosure sale.[1] In a related appeal, *Oconee Federal Savings and Loan Assn. v.
Brown*, 349 Ga. App. 54 (825 SE2d 456) (2019) ("*Oconee I*"), this Court reversed the
grant of an interlocutory injunction enjoining the foreclosure sale of the subject
property owned by the Browns, upon finding that the Browns had not tendered to
Oconee Federal the amount due under a home equity line of credit ("HELOC")
agreement. Id. at 65.

---

[1] The Ranck defendants were dismissed with prejudice from the action.

Oconee Federal also filed a motion for summary judgment on its counterclaim for payment of the monies due under the loans and on the Browns' substantive claims, the trial court's denial of which provides the basis for the present appeal. The trial court issued a certificate for immediate review, and Oconee Federal filed an application for an interlocutory appeal, which this Court granted. On appeal, Oconee Federal contends that the trial court's order erred in denying its motion for summary judgment on its counterclaim for payment of the balances on the underlying loans and in denying its motion for summary judgment as to the Browns' claims.

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). Following a trial court's grant or denial of summary judgment, we conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party. *Cochran v. Kendrick*, 297 Ga. 655, 658 (2) (778 SE2d 1) (2015). "We do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution." *Tookes v. Murray*, 297 Ga. App.

2

765, 766 (678 SE2d 209) (2009). Following our review and for the reasons set out below, we reverse.[2]

The Browns obtained a home loan for $136,000 from Oconee Federal in 2003 (the "2003 Loan") and a $40,000 HELOC from Oconee Federal in 2007.[3] Both loans were secured by their residential property. In 2015, the Browns submitted loan modification applications for the 2003 Loan and the HELOC.[4] The Browns alleged that during this period, Oconee Federal promised them that their loans would be modified and that they were instructed not to make loan payments while their loans were being considered for the modifications. The Browns made their last loan payments on the mortgage loan and HELOC in April 2015. Oconee Federal subsequently denied the loan modification applications in September 2015.

---

[2] We also adopt the facts and procedural history as set forth in *Oconee I*, 349 Ga. App. at 54-57. Moreover, "[i]t is well established that any issue that was raised and resolved in an earlier appeal is the law of the case and is binding on this Court[.]" (Punctuation omitted.) *Ross v. State*, 310 Ga. App. 326, 327 (713 SE2d 438) (2011).

[3] The expiration of the draw period for the HELOC was May 15, 2017, at which point the unpaid balance was due in a balloon payment.

[4] Although the exact period in time is unclear from the record, the 2003 Loan was owned at some point by Freddie Mac, but was transferred back to Oconee Federal in September 2015. During the period that Freddie Mac owned the loan, Oconee Federal was the servicer on the loan.

3

On December 17, 2015, the Browns sent a qualified written request ("QWR") letter to Oconee Federal's counsel, the Ranck firm, under the federal Real Estate Settlement Procedures Act, 12 USC § 2601 et seq. ("RESPA"), seeking certain information and documents related to the HELOC. On January 15, 2016, Oconee Federal, through counsel, responded to the request and advised the Browns that its internal investigation had not identified any inaccuracies in the credits and debits attributed to the Browns' loans. The letter noted a "possible discrepancy" in how two payments were applied in October 2011 but explained that Oconee Federal would seek clarification from the Browns about how they intended the payments to be applied.

On January 29, 2016, after Oconee Federal initiated foreclosure proceedings under the HELOC and security deed, the Browns filed the first of three amended complaints, "seeking injunctive relief to enjoin the foreclosure and raising multiple claims of wrongful foreclosure, breach of contract, and fraud." *Oconee I*, 349 Ga. App. at 57-58. Oconee Federal then cancelled the scheduled foreclosure, but resumed the foreclosure proceedings on March 2, 2018 because the Browns had failed to "repay their debt under the HELOC agreement in full by the maturity date of May 15, 2017." Id. at 58-59. The trial court, however, granted the Browns injunctive relief to

4

stop the foreclosure sale upon the Browns' tender of $2,700 into the trial court's registry.[5]

In their subsequent third amended complaint, the Browns alleged causes of action for: (1) breach of contract; (2) anticipatory repudiation; (3) breach of the duty of good faith and fair dealing; (4) violations of the Georgia Fair Lending Act ("GFLA"), OCGA § 7-6A-1 et seq.; (5) fraud; (6) negligence; (7) violations of RESPA; (8) injunctive and declaratory relief; and (9) punitive damages and attorney fees. Oconee Federal filed a motion for summary judgment, which the trial court denied, stating only that "[t]his Defendant having filed a [m]otion for [s]ummary [j]udgment and after having considered all matters of record and oral argument by counsel, the Court hereby determines that there are genuine issues of material facts, and that the [m]otion should be DENIED." It is from that order that Oconee Federal appeals.

1. Oconee Federal first contends that the trial court erred in denying summary judgment as to its counterclaims for payment of the 2003 Loan and 2007 HELOC

_____

[5] As noted above, the trial court's grant of injunctive relief to the Browns was reversed in *Oconee I*.

because Oconee Federal met its burden of establishing a prima facie case for payment on both loans, and the Browns failed to establish any defenses in response.[6] The Browns maintain that Oconee Federal is estopped from collecting on the notes because the bank made it impossible to pay though its unequitable acts, including blocking online payments, refusing payments, and prematurely reporting the couple in default. The Browns characterize Oconee Federal's alleged actions and inactions as creating an equitable extension of the time required for payment of the loans. The Browns further assert that the subject loans are neither due nor enforceable and that questions remain regarding the amounts due.

It is undisputed that the Browns obtained a home loan from Oconee Federal in 2003 and a HELOC from Oconee Federal in 2007, and that both loans were secured by their residential property.[7] The 2003 Loan provided that failure to make monthly payments would constitute a default and, that upon written notice and failure to cure within 30 days, Oconee Federal had the right to accelerate the loan. The HELOC also

---

[6] Oconee Federal's answer alleged a counterclaim for "complaint on notes" asserting that the Browns' indebtedness on the 2003 loan was $38,683.82 as of February 25, 2016 and, as of the same date, $42,917.29 on the 2007 HELOC.

[7] The loans were initially provided by Stephens Federal Bank, which subsequently merged with Oconee Federal.

provided that failure to pay would constitute default and that the balance of the loan was due at the expiration of the 120 month draw period on May 10, 2017. It is further undisputed that the Browns had not made payments on either loan since May 2015.

"In a suit on a note, when signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." (Citation omitted.) *Heath v. Boston Capital Corp. Tax Credit Fund VIII*, 253 Ga. App. 537, 538 (1) (559 SE2d 743) (2002). See also *Braswell v. Bank of Early*, 229 Ga. App. 445, 447 (494 SE2d 277) (1997). Upon review of the record, and construing the evidence in favor of the Browns, we find that Oconee Federal made the required prima facie showing to recover under the notes.

The Browns raise various defenses, including that Oconee Federal rejected tender, that the amount owed under the loans is disputed, and equitable estoppel, in that they had relied on Oconee Federal's promise to modify their HELOC loan. But in *Oconee I*, we found that those defenses were without merit in the context of considering whether the Browns were excused from the requirement that they tender payment on the HELOC. *Oconee I*, 349 Ga. App. at 65. Specifically, we found that "the Browns' claim that the amount owed is in dispute does not excuse them from the requirement that they tender payment to Oconee Federal;" that the "tender must be

7

continuous, and the Browns have not shown that they have tendered any payment to Oconee Federal after the HELOC debt matured or that Oconee Federal would have refused any such tender;" that "the Browns [are not] excused from the tender requirement based on their claims that Oconee Federal prevented them from paying their debt by denying their application to modify the HELOC and in reporting them as delinquent to credit agencies;" and that "[s]imilarly unavailing is the Browns' related claim that Oconee Federal is estopped from collecting on the HELOC debt due to its purported promises regarding the application to modify the debt." Id. at 63-64.

Pursuant to OCGA § 9-11-60 (h), "[a]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." See *Fulton-DeKalb Hosp. Auth. v. Walker*, 216 Ga. App. 786, 788 (1) (456 SE2d 97) (1995); see also *Hicks v. McGee*, 289 Ga. 573, 577-578 (2) (713 SE2d 841) (2011) ("[A] ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings *in that case* in the lower court and in the Supreme Court or the Court of Appeals, as the case may be. Georgia's appellate courts are required to adhere to the law of the case rule in all matters which they

consider. . . . [A]ppellate rulings remain binding as between parties to a case, so long as the evidentiary posture of the case remains unchanged[.]") (punctuation omitted; emphasis in original).

In light of this Court's ruling in *Oconee I* as to the Browns' defenses, and given that Oconee Federal established a prima facie case as to the outstanding debt under the HELOC and that the Browns failed to establish a defense, the trial court erred in denying Oconee Federal's motion for summary judgment on its counterclaim for payment of the HELOC debt. The Browns put forth identical defenses regarding payment of the 2003 Loan, and thus as Oconee Federal also established a prima facie case as to that debt, we find this Court's ruling in *Oconee I* controlling as to payment of the 2003 Loan as well. Accordingly, the trial court also erred in denying summary judgment to Oconee Federal on its counterclaim for payment of the 2003 Loan.

2. Oconee Federal also contends that the trial court erred in denying its motion for summary judgment on the Browns' claims. The Browns' complaint, as thrice amended, alleged 13 counts including: injunctive relief, declaratory judgment, breach of contract, anticipatory repudiation, breach of good faith and fair dealing, violation

of the GFLA, fraud, conspiracy, negligence, punitive damages, violation of RESPA, and attorneys fees.[8]

*a. Declaratory Judgment* [9]

The Browns sought a declaratory judgment under OCGA § 9-4-2, alleging a justiciable controversy between the parties as to the ownership of the two loans; the validity of the security deeds and promissory notes on which Oconee Federal seeks to foreclose; the balance due on the loans; and Oconee Federal's rights and duties in servicing the loans, foreclosing the loans and in attempting to collect the loans. On appeal, Oconee Federal asserts that summary judgment was proper because there is no justiciable issue between the parties. According to Oconee Federal, the loans have matured, and the Browns do not allege any future act or conduct upon which they face uncertainty; thus, the couple in essence is seeking an advisory ruling on their

---

[8] The complaint also alleged violation of the Fair Debt Collection Practices Act ("FDCPA") against the Ranck defendants who, as previously noted, were dismissed with prejudice from the action.

[9] The Browns also sought injunctive relief, the grant of which was reversed in *Oconee I*. Thus, that holding established the law of the case as to that claim in the present appeal. See *Security Life Ins. Co. v. Clark*, 273 Ga. 44, 46 (1) (535 SE2d 234) (2000); OCGA § 9-11-60 (h) (setting forth the law of the case rule for rulings by the Supreme Court and the Court of Appeals).

purported defense. In contrast, the Browns contend that there remains a controversy "regarding the status of their loans and security deeds."

To obtain declaratory relief,

[t]he plaintiff must show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to its alleged right, and which future action without direction from the court might reasonably jeopardize its interest. A declaratory judgment may not be granted in the absence of a justiciable controversy. The object of the declaratory judgment is to permit determination of a controversy *before* obligations are repudiated or rights are violated. As many times pointed out by this court, its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light *before* he steps rather than after he has stepped in a hole.

(Citations and punctuation omitted; emphasis in original.) *Farm & Home Life Ins. Co. v. Skelton,* 235 Ga. App. 507, 508 (510 SE2d 76) (1998).

An actual controversy ripe for adjudication does not necessarily reflect a justiciable controversy for purposes of a declaratory judgment. Id. The Browns' uncertainty regarding the status of their loans and security deeds may present issues ripe for adjudication, but the Browns do not show how they face any uncertainty about future rights or obligations such that a justiciable issue is presented. The

11

obligations under the loans and security deeds are set forth on the face of each document, and for purposes of a declaratory judgment, the Browns have not demonstrated "the need of any direction from the trial court with respect to future conduct on [their] part which might increase [their] liability or otherwise affect [their] interests." *Farm & Home Life Ins. Co.,* 235 Ga. App. at 508. See *Richardson v. Phillips*, 302 Ga. App. 305, 310 (1) (690 SE2d 918) (2010) (a declaratory judgment is not permitted to "simply . . . have the trial court decide the propriety of past conduct committed by [the defendant]").

Thus, the trial court erred in denying summary judgment to Oconee Federal on this claim.

*b. Breach of Contract*

The Browns alleged breach of contract for Oconee Federal's failure to "provide [them] with certain notices regarding the acceleration of the amounts due under the instruments," or notice prior to the acceleration of the loans and initiation of the foreclosure. They asserted that Oconee Federal was contractually obligated to provide timely written notice before it accelerated the amount due on the loans or initiated foreclosure; permit the Browns to reinstate the loans by paying the balance due; and

12

allow the Browns to reinstate and accept the total balance owed on one or more of the loans.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371 (1) (669 SE2d 179) (2008). Oconee Federal contends that the trial court erred in denying its motion for summary judgment on the Browns' claim because the couple cannot show damages. This claim was based on Oconee Federal's alleged failure to provide certain notices about the acceleration of the debts and impending foreclosure, but there was no foreclosure and thus no damages.

"Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. Even if we assume, without deciding, that the failure to give the Browns notice of the acceleration of the notes and impending foreclosure evinced a breach of certain contractual obligations, to prevail on their claim for breach of contract, the Browns still had to show damages resulting from Oconee Federal's failure to give notice.

13

In their complaint, the Browns only alleged that they suffered "damages in an amount to be proven at trial," and in their appellate response, only assert that there was a breach of the contractual obligation to provide notice. They have come forward with no evidence showing how Oconee Federal's failure to provide notice of the acceleration and impending foreclose caused them harm. Instead, the evidence demonstrates that the foreclosure sale was cancelled, and Oconee Federal further stipulated that it had no immediate plans to reinitiate foreclosure of the property. Further, upon the Browns' motion to tender funds into the court registry, the trial court permitted the couple to "deposit funds previously tendered by [the Browns] into the registry of [the] Court and to deposit future payments into the registry as they are tendered by [the Browns.]"[10]

---

[10] The Browns' motion for tender provided:
Whereas, a current dispute between the parties exists in relation to [the Browns'] loans, and in an effort to demonstrate [the Browns'] intentions to comply with their financial obligations, [the Browns], in good faith, request that this Court enter an order authorizing [the Browns] to tender into the registry of the Court the total amount [the Browns] owe from May 2015 until May 2016, and authorizing all future monthly payments due to Defendant Oconee Federal from [the Browns] pursuant to [the subject] loans . . . be deposited in the registry of the Court until the Court enters a Final Judgment in this matter.

For the Browns to succeed on this breach of contract claim, they

> must show that the premature or improper exercise of some power under the deed (acceleration or sale) resulted in damages that would not have occurred but for the breach. In cases such as this, where there was no actual exercise of the power of sale, the only possible harm must be traced back to the allegedly unauthorized acceleration of the note.

(Footnotes omitted.) *Bates v. JP Morgan Chase Bank*, 768 F3d 1126, 1132-33 (11th Cir. 2014).

The Browns have not made this showing. Thus, the trial court erred in denying Oconee Federal's motion for summary judgment on this claim.

*c. Anticipatory Repudiation*

Oconee Federal also contends that summary judgment should have been granted on the Browns' anticipatory repudiation claim. It argues that the claim fails because Oconee Federal did not repudiate the "entire contract" with the Browns and that the Browns must show "an unqualified repudiation of the entire contract prior to the time for performance" to establish such a claim.

> [T]he anticipatory repudiation of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract. While technically such a repudiation is not a breach of contract, the contractual

15

time for performance not having arrived, the law recognizes that under certain circumstances the innocent party to the contract may treat such an anticipatory repudiation as a breach thereof. Thus when one party to a bilateral contract of mutual dependent promises absolutely refuses to perform and repudiates the contract prior to the time of his performance, the innocent party is at liberty to consider himself absolved from any future performance on his part[.]

(Punctuation and citations omitted.) *CCE Fed. Credit Union v. Chesser*, 150 Ga. App. 328, 330 (1) (258 SE2d 2) (1979).

The Browns alleged that Oconee Federal anticipatorily repudiated its contractual obligations under the 2003 Loan and security deed, and the 2007 security deed and HELOC, by rejecting the couple's attempts to tender payment, by instructing them not to make payments on the loan while the loan modification was being considered, and by demanding that the Browns sign away their legal and statutory rights. The couple asserts that in rejecting their tender of payment, Oconee Federal repudiated its duties to accept payments and apply them thereon.

"The breach which will form the basis for this type of action is an unqualified repudiation of the entire contract prior to the time for performance. The repudiation must go to the whole contract." (Citation and punctuation omitted.) *Esquire Carpet Mills v. Kennesaw Transp. Inc.*, 186 Ga. App. 367, 370 (3) (367 SE2d 569) (1988).

16

Here, there could be no anticipatory repudiation of the whole contract because Oconee Federal had performed its primary purposes under the contracts by providing the Browns with loans pursuant to the 2003 note and the 2007 HELOC. *Coffee Butler Svc. v. Sacha*, 258 Ga. 192, 193 (1) (366 SE2d 672) (1988) (establishing that the doctrine would apply only if there is an unqualified repudiation of the entire obligation prior to the time of performance).

Thus, the trial court erred in denying Oconee Federal summary judgment on this claim as well.

*d. Good Faith and Fair Dealing*

Oconee Federal contends that the trial court erred in denying its motion for summary judgment on the Browns' claims for breach of the implied covenant of good faith and fair dealing.

Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. *WirelessMD v. Healthcare.com Corp.*, 271 Ga. App. 461, 468 (2) (610 SE2d 352) (2005). The implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability. *Stuart Enterprises Intl. v. Peykan, Inc.*, 252 Ga. App.

17

231, 233-34 (2) (555 SE2d 881) (2001). In their lawsuit, the Browns alleged that Oconee Federal violated this implied contractual duty by coding their loans to prevent electronic payment, failing to notify them of the changes to the electronic payment system, falsely communicating that they were in default of their loans, refusing tender of payment, and misapplying payments. Because Oconee Federal was entitled to summary judgment on the Browns' breach of contract claim, see Division 2 (b), their breach of the implied covenant of good faith and fair dealing claim also fails. *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 533 (2) (c) (744 SE2d 369) (2013) ("Because the [borrowers] did not assert a breach of contract claim, their claim for breach of the implied covenant of good faith and fair dealing failed as a matter of law."); *Heritage v. Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 374 (3) (601 SE2d 842) (2004) ("[i]nasmuch as [borrower] cannot prevail on its breach of contract claim it cannot prevail on a cause of action based on the failure to act in good faith in performing the contract."); see also *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F2d 1414, 1429 (IV) (11th Cir. 1990) ("The covenant [to perform in good faith] is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms . . . *de facto* when performance is maintained *de jure*.").

18

Further, we note that the Browns' breach of the implied covenant of good faith and fair dealing claim essentially alleges that due to Oconee Federal's bad faith, the Browns may recover damages under the contracts even though we have found that the Browns have failed to show a breach of contract. See Division 2 (b). Likewise, this claim is inconsistent with *Oconee I* and Division 1, where we held that the Browns were not excused from the tender requirement even though they alleged that Oconee Federal prevented them from paying their debt. See *Automatic Sprinkler Corp. of America v. Anderson*, 243 Ga. 867, 868 (257 SE2d 283) (1979) ("[t]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do.") see also *Martin v. Hamilton State Bank*, 314 Ga. App. 334, 335-36 (723 SE2d 726) (2012) ("When a contract is silent, principles of good faith . . . fill the gap. They do no block use of terms that actually appear in the contract.") (citation omitted.) Oconee Federal is entitled to summary judgment on this claim for these additional reasons.

*e. Georgia Fair Lending Act*

Oconee Federal contends that the trial court erred in denying it summary judgment on the Browns' claim for alleged violations of the GFLA. We agree.

The Browns alleged that Oconee Federal violated the statute during their "planned refinance" by encouraging them to default the existing 2003 Loan and 2007 HELOC. However, the evidence does not establish that there was a planned refinance of the loans because Oconee Federal denied the Browns' request for modification of the loans.

OCGA § 7-6A-3 provides that "[a]ll home loans shall be subject to the following limitations and prohibited practices" including that "[n]o creditor or servicer shall recommend or encourage default on an existing loan or other debt prior to and in connection with the closing or planned closing of a home loan that refinances all or any portion of such existing loan or debt[.]" But, the statute further provides that "[a]n action under this chapter may be brought within five years after the date of the first scheduled payment by the borrower under the home loan." OCGA § 7-6A-7 (h). The statute also provides for damages "equal to the recovery of two times the interest paid under the loan" as well as "forfeiture of interest under the loan for any violation of paragraph (1) or (2) of Code Section 7-6A-3." OCGA § 7-6A-7 (a) (2).

Even if the Browns' application for a modification could be characterized as a "planned closing" under the GFLA, because there was no ensuing loan, there was

20

no scheduled payment under the loan triggering the time period for bringing an action, nor was there any interest paid on the loan under which statutory damages could be assessed. Thus, this claim fails and the trial court erred in denying Oconee Federal's motion for summary judgment as to this count.

*f. Conspiracy to Violate the Georgia Fair Lending Act*

Oconee Federal contends that the trial court erred in denying its motion for summary judgment on the Browns' claim of conspiracy to violate the GFLA.

> To recover damages based on a claim of civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. The conspiracy . . . itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. The essential element of the alleged conspiracy is proof of a common design establishing that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.

(Citations and punctuation omitted.) *Tyler v. Thompson*, 308 Ga. App. 221, 224-25 (3) (707 SE2d 137) (2011).

The Browns acknowledge that their claim of conspiracy is dependent upon the viability of the GFLA claim. Thus, as that claim failed, the conspiracy claim also

21

fails. See *Dyer v. Honea*, 252 Ga. App. 735, 738 (2) (557 SE2d 20) (2001) ("The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage.") (footnote omitted).

### g. Fraud

Oconee Federal contends that the trial court erred in denying summary judgment on the Browns' fraud claim because the Browns do not specifically identify any misrepresentation that they have justifiably relied on to their detriment and an alleged promise to modify the loans cannot be the basis of a fraud claim.[11] The Browns maintain that even though Oconee Federal knew that it planned to foreclose on the couple, it continued to represent to the Browns that they were being considered for modification. Even assuming that Oconee Federal promised the Browns that their loan modifications would be approved, that promise cannot serve as the basis of a claim for fraud because

---

[11] A fraud claim has five elements: "a false representation by a defendant; scienter; intention to induce the plaintiff to act or refrain from acting; justifiable reliance by plaintiff; and damage to the plaintiff."(Citation omitted.) *Wertz v. Allen*, 313 Ga. App. 202, 207-08 (2) (721 SE2d 122) (2011).

> [a]lthough fraud can be predicated on a misrepresentation as to a future event where the defendant knows that the future event will not take place, fraud cannot be predicated on a promise which is unenforceable at the time it is made. The instant alleged oral contract [to modify the loans] was unenforceable at the time it was purportedly made because it was not in writing as required by OCGA § 13-5-30 (7). Obviously, one cannot sue in fraud based upon the alleged breach of an oral contract which would itself be unenforceable under the Statute of Fraud

(Citations and punctuation omitted.) *Studdard v. George D. Warthen Bank*, 207 Ga. App. 80, 81 (2) (427 SE2d 58) (1993) (affirming grant of summary judgment on fraud claim based on promise that was "unenforceable at the time it [was] made" where alleged promise to extend a line of credit was insufficient under the statute of frauds); *Desouza v. Fed. Home Mortg. Corp.*, 572 F.Appx. 719, 723 (11th Cir. 2014) (citing *Studdard* and affirming district court's dismissal of fraud claim based on alleged promise to modify loan as failing to satisfy Georgia's statute of frauds). See OCGA § 13-5-30 (4), (7) ("To make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him or her: [a]ny contract for sale of lands, or any interest in, or concerning lands . . . [a]ny commitment to lend money.")

Moreover,

23

[m]ere opinions, predictions, and conjectures relating to future events cannot form the basis of a fraud claim. It is axiomatic that a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. Representations concerning expectations and hopes are not actionable.

*Greenwald v. Odom*, 314 Ga. App. 46, 52-53 (1) (723 SE2d 305) (2012).

Accordingly, the trial court erred in denying Oconee Federal's motion for summary judgment on the Browns' fraud claim.

*h. Negligence*

Oconee Federal argues that the Browns' negligence claim fails because this lawsuit arises out of contracts between the Browns and Oconee Federal, which cannot serve as the basis for a negligence claim.[12] In their response, the Browns argue that

[12]  The essential elements of a negligence cause of action are: (1) a duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of the other.

*Brookview Holdings v. Suarez*, 285 Ga. App. 90, 91 (645 SE2d 559) (2007).

Oconee Federal negligently failed to comply with Freddie Mac's servicing requirements.[13] However, loan servicing guidelines between Freddie Mac and Oconee Federal did not impose a duty on Oconee Federal for the benefit of the Browns, and this Court has recognized that Freddie Mac's servicer guidelines for loan modifications do not create private causes of action for individual borrowers. See *U.S. Bank, N.A. v. Phillips*, 318 Ga. App. 819, 824 (1) (734 SE2d 799) (2012) (recognizing that "homeowners are incidental beneficiaries of the loan servicers' participation in HAMP [the federal Home Affordable Modification Program], and . . . Congress did not intend to endow homeowners with third-party beneficiary rights to enforce HAMP"); *Fielbon Dev. Co. v. Colony Bank*, 290 Ga. App. 847, 855 (3) (660 SE2d 801) (2008) ("[A] defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law").

Thus, the trial court erred in denying the motion for summary judgment on the Browns' negligence claim.

---

[13] As earlier noted, at some point Freddie Mac owned the Browns' 2003 Loan, and Oconee Federal was Freddie Mac's loan servicer.

25

*i. RESPA Violation*

The Browns alleged that Oconee Federal violated RESPA by failing to acknowledge receipt of their QWR within five days or respond within 30 days as statutorily required. The Browns also alleged that the bank failed to follow certain statutorily-mandated loss-mitigation procedures.[14]

Oconee Federal contends that the Browns cannot recover on the claim for violation of RESPA. It asserts that the Browns have not shown a violation of RESPA arising from the request for information under that statute, that none of the statutory early intervention or loss mitigation requirements apply because Oconee Federal qualifies as a "small servicer" under the statute, and that even if Oconee Federal violated RESPA, the Browns have not suffered damages therefrom.

RESPA, 12 USC § 2601 et seq, is a consumer protection statute that requires loan servicers of federally related mortgage loans to provide timely written responses

---

[14] "A loss-mitigation application is a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage." (Citation and punctuation omitted.) *Urdaneta v. Wells Fargo Bank N.A.*, 734 F. Appx. 701, 704, n.1 (11th Cir. 2018). In establishing how a mortgage-loan servicer handles a borrower's loss-mitigation, "Regulation X requires a servicer to evaluate a complete loss-mitigation application within 30 days of receipt of the application. The loan servicer's obligations, however, are triggered only when the servicer receives from a borrower a complete loss mitigation application more than 37 days before a foreclosure sale." (Citations and punctuation omitted.) Id. at 705.

26

to borrowers under certain circumstances. See Regulation X, 12 CFR § 1024.1 through § 1024.4 (Regulation X was issued to implement RESPA); *Freeman v. Quicken Loans*, 566 U.S. 624 (132 SCt 2034, 2038, 182 LE2d 955 (2012). When a borrower submits a QWR—a written correspondence that includes the borrower's name and account and sufficient detail about the information sought—the servicer must provide "a written response acknowledging receipt of the correspondence." 12 USC § 2605(e) (creating a "[d]uty of loan servicer to respond to borrower inquiries"). See also 12 CFR § 1024.35(b)(7) (requiring that a servicer must investigate and respond to a notice from a borrower that the servicer "[f]ail[ed] to provide accurate information to a borrower regarding loss mitigation options and foreclosure"). The servicer generally has 30 business days to respond to a notice of error. 12 USC § 1024.35 (e) (3) (i) (C). A servicer must respond by fixing the error, crediting the borrower's account, and notifying the borrower, or concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower. See 12 USC § 2605(e) (2); 12 CFR § 1024.35(e) (1) (i). If the servicer fails to respond adequately to the borrower's notice of error, then the borrower has a private right of action to sue the servicer under RESPA. 12 USC § 2605 (e) (2), (f).

Pretermitting whether Oconee Federal is subject to Regulation X and other RESPA provisions,[15] we note that the only relief available under RESPA is an award of actual damages and additional damages in certain circumstances, so an assertion that a servicer breached a duty under RESPA without causing actual harm does not state a claim under the statute. *Renfroe v. Nationstar Mortg., LLC*, 822 F3d 1241, 1246 (11th Cir. 2016). See 12 USC § 2605 (f) (1) (explaining that RESPA makes violators liable to individual borrowers for "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section"). Furthermore, the actual damages must arise "as a result of" the servicer's alleged violation. 12 USC § 2605 (f) (1) (A).

The Browns have failed to show any such harm, and thus the trial court erred in denying Oconee Federal's motion for summary judgment on this claim as well.

---

[15] Oconee Federal asserts that its posture under the statute as a "small servicer" excepts it from certain notice and other provisions under RESPA and Regulation X. See 12 CFR §1026.41(e)(4))(i) ("A creditor, assignee, or servicer is exempt from the requirements of this section for mortgage loans serviced by a small servicer.") "A small servicer is a servicer that: (A) Services, together with any affiliates, 5,000 or fewer mortgage loans, for all of which the servicer (or an affiliate) is the creditor or assignee." 12 CFR § 1026.41(e)(4) (ii).

*j. Punitive Damages and Attorney Fees*

Because we have found that all of the Browns' substantive claims are subject to summary judgment, their derivative claims for attorney fees and punitive damages likewise fail. *Ga. Motor Trucking Assn. v. Ga. Dept. of Revenue*, 301 Ga. 354, 367 (B) (801 SE2d 9) (2017); see also *Kammerer Real Estate Holdings, LLC v. Forsyth County Bd. of Commrs.*, 302 Ga. 284, 287 (4) (806 SE2d 561) (2017) ("[A] claim for attorney fees under OCGA § 13-6-11 is a derivative claim[.]"); *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 181 (6) (733 SE2d 457) (2012) (claim for punitive damages is derivative of a plaintiff's substantive claims); *Wright v. Apartment Investment Mgmt. Co.*, 315 Ga. App. 587, 590 (1) (a), n.6 (726 SE2d 779) (2012) (Because no claim survived, the derivative claim for punitive damages and attorney fees also fails).

*Judgment reversed. Reese, J., concurs. Barnes, P. J., concurs in part and dissents in Division 2 (d) and (j).\**

**\*DIVISION 2 (d) and (j) OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A19A0040. OCONEE FEDERAL v. BROWN et al.                    BA-086

Barnes, Presiding Judge, concurring in part, dissenting in part.

Because I believe that the trial court properly denied summary judgment to Oconee Federal on the Browns' claim for breach of the implied covenant of good faith and fair dealing, I respectfully dissent to subsections (d) and (j) of Division 2.

> Every contract implies a covenant of good faith and fair dealing in the performance of the terms of the agreement. This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. And,

where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.

(Citations and punctuation omitted.) *Camp v. Peetluk*, 262 Ga. App. 345, 350 (2) (585 SE2d 704) (2003); *Fisher v. Toombs County Nursing Home*, 223 Ga. App. 842, 845 (2) (479 SE2d 180) (1996) ("An implied term in an agreement exists where it is reasonable and necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they deemed it unnecessary to state.") (citation omitted.). To that end, "whenever the cooperation of the promisee is necessary for the performance of the promise, there is a condition implied that the cooperation will be given." (Citations and punctuation omitted.) *Whisenant v. Fulton Fed. Sav. &c.*, 200 Ga. App. 31, 33 (1) (406 SE2d 793) (1991). See *Booth v. Saffold*, 46 Ga. 278, 281 (1872) (when covenants are mutual and dependent, a right of action accrues to either party on one's performance or on one's offer to perform, if performance is defeated by fault of other party).

In their lawsuit, the Browns alleged that Oconee Federal violated this implied contractual duty by coding their loans to prevent electronic payment, failing to notify them of the changes to the electronic payment system, falsely communicating that

they were in default of their loans, refusing tender of payment, and misapplying payments. The 2003 Loan required the Browns to make monthly payments, and per the attendant security deed, the payments would be "accepted and applied by [the] Lender" to this debt. Likewise, the Browns were also required to make payments under the 2007 HELOC and security deed. Oconee Federal had a contractual duty, either express or implied, to act in good faith in performing under the contract in such a way that would permit the Browns to fulfill their contractual obligation to make the payments.

Because there remain genuine issues of material fact regarding whether Oconee Federal's handling of the Browns' payments on the loans showed a lack of good faith and fair dealing, the trial court did not err in denying summary judgment as to this claim. Based on the foregoing, the trial court also did not err in denying summary judgment as to the Browns' claims for punitive damages and attorney fees.

Thus, for these reasons, I must concur in part, and dissent in part.